878 So.2d 361 (2004)
Daniel Kevin SCHMIDT, Petitioner,
v.
John E. CRUSOE, etc., Respondent.
No. SC00-2512.
Supreme Court of Florida.
May 1, 2003.
Rehearing Denied July 14, 2004.
Susan L. Kelsey and Stephen F. Hanlon of Holland & Knight, LLP, Tallahassee, FL; Robin L. Rosenberg of Holland & Knight, LLP, St. Petersburg, FL; and Wendell T. Locke of Holland & Knight, LLP, Fort Lauderdale, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, and Robert C. Brannan, Assistant Attorney General, Tallahassee, FL, for Respondent.
PER CURIAM.
Daniel Kevin Schmidt petitions this Court for a writ of mandamus. We have jurisdiction. See art. V, § 3(b)(8), Fla. Const. For the reasons set out below, we grant the petition and hold that an inmate's petition for writ of mandamus challenging a loss of gain time is a collateral criminal proceeding and not a civil lawsuit *362 as contemplated by the Prisoner Indigency Statute.

FACTS
Schmidt is serving a criminal sentence and was disciplined for allegedly having lied to prison staff. As punishment, the Department of Corrections forfeited a portion of the gain time that Schmidt had already earned as a reduction to his sentence. Schmidt filed a mandamus petition in the circuit court contesting the forfeiture. The circuit court sought a filing fee or an affidavit of indigency and a printout of Schmidt's inmate account pursuant to the Prisoner Indigency Statute. See § 57.085, Fla. Stat. (2002). Schmidt responded that he was not subject to these requirements because his petition was not a civil lawsuit, but rather was a "collateral criminal proceeding" exempted under the statute. See § 57.085(10), Fla. Stat. (2002). When the circuit court rejected this contention, Schmidt sought review by a petition for writ of prohibition in the First District Court of Appeal. The district court also invoked the statute and advised Schmidt that his case would be dismissed if compliance or a filing fee was not forthcoming. Schmidt then filed a petition in this Court, and we stayed proceedings pending consideration of the merits of his petition and the responses thereto.

ANALYSIS

I. Jurisdiction
At the time Schmidt filed his petition here, this Court was about to issue Geffken v. Strickler, 778 So.2d 975 (Fla.2001), which held that a writ petition that contests a conviction or sentence is a collateral criminal proceeding and is therefore exempt from the Prisoner Indigency Statute. Schmidt alleged that the First District was about to dismiss his case because he had failed to comply with the Prisoner Indigency Statute. Since it was at least debatable that a writ petition contesting the forfeiture of gain time which results in a longer period of incarceration should also be considered a collateral criminal proceeding and thus exempt from the statute, this Court stayed the pending case in the First District Court of Appeal, requested responses, and held oral argument.
This Court has used its extraordinary writ jurisdiction to address indigency determinations by the district courts in quite a few cases over the years. See, e.g., Geffken v. Strickler, 778 So.2d 975 (Fla.2001). In most cases, the petition filed in this Court was a petition for writ of mandamus and the petitioner's case had already been dismissed in the district court. In Caldwell v. Estate of McDowell, 507 So.2d 607 (Fla.1987), for example, this Court held that the petitioner had a clear legal right to be deemed insolvent and thus the district court had a duty to reinstate the appeal it had dismissed for failure to pay the filing fee. Later mandamus cases from this Court have also required district courts to reinstate actions dismissed for failure to pay filing fees. See, e.g., Mitchell v. Moore, 786 So.2d 521 (Fla.2001) (instructing district court to reinstate appeal it had dismissed when inmate appellant failed to comply with the copy requirement of the Prisoner Indigency Statute);[1]Quigley v. Butterworth, 708 *363 So.2d 270 (Fla.1998) (instructing district court that had dismissed appeal due to trial court's denial of indigency to consider action in the district court as an appeal of the trial court's denial of indigency); McFadden v. Fourth District Court of Appeal, 682 So.2d 1068 (Fla.1996) (instructing district court to reinstate appeal it had dismissed when inmate appellant failed to either pay a filing fee or obtain an order of indigency from the trial court).
In this Court's prior mandamus cases concerning filing fees, the district court had already dismissed the petitioner's case and this Court used its mandamus jurisdiction to direct the district court to reinstate the case. This case differs somewhat because we stayed Schmidt's case in the district court before it was able to dismiss it for failure to comply with the Prisoner Indigency Statute. Thus, even though there is no need to direct the district court to reinstate Schmidt's case, we must determine whether to direct the district court to consider Schmidt's indigency without requiring him to comply with the Prisoner Indigency Statute. If the Prisoner Indigency Statute does not apply in this case, Schmidt has a clear legal right and the district court has a clear legal duty to determine his indigency without requiring compliance with the statute. The Prisoner Indigency Statute is still relatively new and questions as to what types of cases it covers continue to arise. The fact that we may need to examine and interpret the statute in order to determine whether there is such a right does not make the right any more or less "clear."

II. The Merits
The Prisoner Indigency Statute, section 57.085, Florida Statutes (2002), was enacted as part of an act which created or amended several statutory provisions for the purpose of reducing unnecessary or frivolous prisoner filings. See ch. 96-106, Laws of Fla.[2] Before the enactment of the Prisoner Indigency Statute, indigent prisoners, like all other indigent persons, could file civil lawsuits without the payment of a filing fee and other court costs. However, section 57.085, Florida Statutes (2002), the *364 Prisoner Indigency Statute, now provides that while an indigent inmate may still initiate a civil lawsuit without first paying a filing fee, a lien may be placed on the inmate's account, and if any money is deposited in the account, a portion of the filing fee is deducted each month until the filing fee is paid in full. The statute specifically excludes "criminal" and "collateral criminal proceedings," see § 57.085(10), Fla. Stat. (2002), from its reach.
Here, Schmidt asserts that regardless of the particular denomination of the petition he filed in the trial court contesting the forfeiture of earned gain time and the calculation of his sentence by the Department of Corrections, it is akin to a traditional habeas corpus action or a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 or 3.800, which have long been deemed hybrid criminal-civil actions and clearly meet the Prisoner Indigency Statute's and this Court's definition of a "collateral criminal proceeding."[3]
Florida's Prisoner Indigency Statute was fashioned, at least in part, on the federal Prison Litigation Reform Act of 1995 (PLRA). See Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 (1996) (codified in part at 28 U.S.C. § 1915 (2000)). Similar to Florida's act, the PLRA's requirement that prisoners pay at least a partial filing fee applies only to civil lawsuits. As a result, the federal circuits have been grappling for years with virtually the same issue now presented to this Court-that is, whether the filing fee provisions of the federal version of the Prisoner Indigency Statute (the PLRA) should be applied to writ petitions which seek relief traditionally available under habeas corpus or other collateral or postconviction proceedings.[4] Acknowledging the hybrid civil-criminal character of such actions, the federal courts have looked to the legislative history of the PLRA to determine whether Congress meant to restrict inmates from filing such actions, and have found that Congress was principally interested in discouraging civil damage suits involving frivolous challenges to prison conditions. See, e.g., United States v. Simmonds, 111 F.3d 737, 743 (10th Cir.1997) (referencing Senator Dole's statement in regard to limiting such prison condition suits involving a challenge to the amount of storage space and the infamous "creamy peanut butter" versus "chunky peanut butter" controversy).
The federal decisions have found no indication in the text of the PLRA or its legislative history to indicate that Congress expected its filing fee payment requirements to apply to traditional hybrid civil-criminal, habeas-type actions in which inmates assert an entitlement to gain time and an accelerated release from prison but were not contesting their conditions of confinement. In Santana v. United States, 98 F.3d 752 (3rd Cir.1996), the Third Circuit explained:
The PLRA applies to prisoners who bring a "civil action" or who appeal a judgment in a "civil action or proceeding." *365 28 U.S.C. § 1915(a)(2), (b). But the PLRA neither defines "civil action" for purposes of in forma pauperis litigants nor expressly excludes habeas corpus proceedings from its scope.
....
We do not believe, however, that the meaning of the phrase "civil action" as used in the PLRA is plain. First, habeas corpus cases are, in effect, hybrid actions whose nature is not adequately captured by the phrase "civil action" ....
....
... Congress enacted the PLRA primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Torts Claims Act, most of which concern prison conditions and many of which are routinely dismissed as legally frivolous. See H.R. CONF. REP. NO. 104-378, 104th Cong., 2d Sess. (1996) (The PLRA "limits the remedies for prison condition lawsuits."); 141 CONG. REC. S14418 (daily ed. Sept. 27, 1995) (statement of Sen. Hatch) (The PLRA will limit frivolous "prison condition lawsuits," such as a prisoner who "sued demanding that he be issued Reebok ... instead of Converse brand shoes.").
....
Furthermore, when the PLRA is read as a whole, it is apparent that Congress did not intend for the statute to apply to habeas proceedings.
Id. at 754-56. Thus, the federal courts have concluded that claims contesting the computation of criminal sentences should continue to be treated as traditional collateral proceedings under habeas corpus, since they were not the type of civil lawsuits Congress meant to discourage or restrict. See Blair-Bey v. Quick, 151 F.3d 1036, 1039-41 (D.C.Cir.1998) (holding that the PLRA does not apply to any requests for collateral relief under the federal habeas corpus statutes); Martin v. Bissonette, 118 F.3d 871, 874 (1st Cir.1997) (holding broadly that PLRA does not apply to habeas corpus petitions filed by state prisoners); Kincade v. Sparkman, 117 F.3d 949, 950-51 (6th Cir.1997) (same with respect to several of the federal habeas corpus statutes); Smith v. Angelone, 111 F.3d 1126, 1131 (4th Cir.1997) (same with respect to habeas corpus actions); Anderson v. Singletary, 111 F.3d 801, 806 (11th Cir.1997) (same with respect to several of the federal habeas corpus statutes);[5]Naddi v. Hill, 106 F.3d 275, 277 (9th Cir.1997) (same with respect to habeas corpus actions); Santana v. United States, 98 F.3d 752, 756 (3d Cir.1996) (same with respect to actions under several of the federal habeas corpus statutes); Reyes v. Keane, 90 F.3d 676, 678 (2d Cir.1996) (same with respect to habeas corpus actions).
A review of Florida's legislative history shows that our Legislature had an intent almost identical to that of Congress when enacting its version of the Prisoner Indigency Statute. Section 57.085 was created pursuant to chapter 96-106, Laws of Florida. At the beginning of the act, the Legislature provided a preamble in which it set forth the basis or reasons for the act. The preamble provides, in pertinent part:

*366 WHEREAS, frivolous inmate lawsuits congest civil court dockets and delay the administration of justice for all litigants, and
WHEREAS, each year self-represented indigent inmates in Florida's jails and prisons file an ever-increasing number of frivolous lawsuits at public expense against public officers and employees, and
WHEREAS, state and local governments spend millions of dollars each year processing, serving, and defending frivolous lawsuits filed by self-represented indigent inmates, and
WHEREAS, the overwhelming majority of civil lawsuits filed by self-represented indigent inmates are frivolous and malicious actions intended to embarrass or harass public officers and employees, and
WHEREAS, under current law frivolous inmate lawsuits are dismissable by the courts only after considerable expenditure of precious taxpayer and judicial resources....
Ch. 96-106, preamble, Laws of Fla.[6] Based upon this express language and a close reading of the legislative scheme, we conclude that the Florida act was enacted for substantially the same reasons Congress acted at the federal level: to discourage the filing of frivolous civil lawsuits, but not to prevent the filing of claims contesting the computation of criminal sentences. Hence, the federal decisions provide a valid framework for our own analysis and decision.
Initially, we note that it is apparent that an action affecting gain time does in fact affect the computation of a criminal defendant's sentence, because the length of time the inmate will actually spend in prison is directly affected. As noted in many of the federal decisions, such a conclusion is also suggested by those decisions of the United States Supreme Court that have treated gain time issues. Long ago, that Court made clear that "[a] prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." Weaver v. Graham, 450 U.S. 24, 32, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). More recently, in Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), the *367 Court rejected the contention of the Florida Department of Corrections that the retroactive cancellation of overcrowding gain time bore no relationship to the original penalty assigned to the crime. The Supreme Court declared that "[t]o the extent that respondents' argument rests on the notion that ... gain-time is not `in some technical sense part of the sentence,' this argument is foreclosed by our precedents. [Gain-time] credits are `one determinant of petitioner's prison term ... and ... [his] effective sentence is altered once this determinant is changed.'" Id. at 445, 117 S.Ct. 891. It is clear that the Supreme Court has refused to be bound by the variations in terminology used in the various challenges to the computation of an inmate's sentence. Instead, it has looked to the effect the challenged action had on the amount of time an inmate has to actually spend in prison. We think we should do the same; thus, we conclude that a gain time challenge is analogous to a collateral challenge to a sentence in a criminal proceeding because the end result is the same  the inmate's time in prison is directly affected.
In the instant case, Schmidt's loss of gain time effectively lengthened his sentence, since by the Department of Corrections' action he now has to serve that additional time in prison. Therefore, we agree, in accord with the authorities discussed above, that his gain time challenge should be considered a "collateral criminal proceeding," and the Prisoner Indigency Statute should not apply.[7] To hold otherwise would result in an unlawful "`chilling' of a criminal defendant's right to appeal or otherwise challenge the propriety or constitutionality of the conviction or sentence," Geffken v. Strickler, 778 So.2d 975, 977 n. 5 (Fla.2001), and raise a serious issue as to criminal defendants' constitutional rights of access to the courts to challenge their sentences.

CONCLUSION
For the reasons discussed above, we lift the stay we previously granted, grant the petition filed in this Court, and direct the district court to consider Schmidt's indigency without regard to the Prisoner Indigency Statute. Because we are confident that the district court will act in a manner consistent with this opinion, we withhold issuance of the writ.
It is so ordered.
ANSTEAD, C.J., PARIENTE, and LEWIS, JJ., and SHAW and HARDING, Senior Justices, concur.
WELLS, J., dissents with an opinion, in which QUINCE, J., concurs.
WELLS, J., dissenting.
I dissent because this Court does not have jurisdiction pursuant to article V, section 3(b)(8), Florida Constitution. The present petition in this Court does not present a claim based upon a clear legal right, which is a prerequisite to this Court's mandamus jurisdiction. Hatten v. State, 561 So.2d 562 (Fla.1990). Nor does *368 this case involve a writ of habeas corpus. The defendant in this proceeding is not contesting his actual loss of gain time  he is contesting whether a court filing fee should be paid.
This case involves an issue of statutory interpretation, as is plainly seen in the majority opinion's analysis of what section 57.085, Florida Statutes, includes and what it does not include. Legislative history of a statute is obviously not germane to the enforcement of a clear legal right by mandamus. Resorting to legislative history is a tool of statutory construction.
I dissent from the majority's departure from long-standing and constitutional bases for this jurisdiction. I do not agree with crafting this Court's writ jurisdiction to reach an issue over which this Court constitutionally only has jurisdiction if there becomes a conflict in statutory construction among the district courts. This Court does not have common law certiorari jurisdiction. Trepal v. State, 754 So.2d 702 (Fla.2000).
QUINCE, J., concurs.
NOTES
[1] Mandamus may be used by a superior tribunal to compel a lower tribunal to perform a clear legal duty. See Hatten v. State, 561 So.2d 562 (Fla.1990). One legal duty of an appellate court is to exercise its jurisdiction once that jurisdiction is properly invoked. See Sky Lake Gardens Recreation, Inc. v. District Court of Appeal, 511 So.2d 293, 294 (Fla.1987) (concluding district court had duty to consider and decide the appeal).

Thus, for decades, this Court and other Florida courts have used mandamus to reinstate appeals and other types of actions which were erroneously dismissed for lack of jurisdiction. See, e.g., Pino v. District Court of Appeal, 604 So.2d 1232 (Fla.1992) (reinstating appeal); Sky Lake Gardens Recreation, Inc. v. District Court of Appeal, 511 So.2d 293 (Fla.1987) (reinstating appeal); State ex rel. Gaines Constr. Co. v. Pearson, 154 So.2d 833 (Fla.1963) (reinstating appeal); State ex rel. Goethe v. Parks, 131 Fla. 741, 179 So. 780 (1938) (reinstating circuit court action); State ex rel. Baggs v. Frederick, 124 Fla. 290, 168 So. 252 (1936) (reinstating appeal); State ex rel. Hillman v. Hutchins, 118 Fla. 220, 158 So. 716 (1935) (reviewing dismissal of landlord-tenant action); State ex rel. Rembrandt Corp. v. Thomas, 117 Fla. 127, 157 So. 337 (1934) (reviewing trial court's refusal to take jurisdiction over a cause); State ex rel. Garrett v. Johnson, 112 Fla. 112, 150 So. 239 (1933) (compelling circuit court to reinstatement action improperly dismissed for lack of jurisdiction); State v. Horne, 75 Fla. 149, 77 So. 672 (1918); State v. Wills, 49 Fla. 380, 38 So. 289 (1905) (reinstating appeal to circuit court); New Hampshire Ins. Co. v. Calhoun, 341 So.2d 777 (Fla. 2nd DCA 1976) (reviewing inappropriate dismissal of personal injury action), aff'd, 354 So.2d 882 (Fla.1978).
[2] Not only did the act amend the statute which regulates pleadings filed by indigents to exclude prisoners and create a new indigency statute for prisoner filings, it also created statutory authority permitting the courts, upon a determination that a pleading is frivolous, to send that finding to the prisoner's institution for disciplinary action, see § 944.279, Fla. Stat. (2002); ch. 96-106, § 5, Laws of Fla. In addition, it amended the gain time forfeiture statute to add that the filing of a pleading found frivolous by a court may also subject a prisoner to gain time forfeiture. See § 944.28(2)(a), Fla. Stat. (2002); ch. 96-106, § 6, Laws of Fla.
[3] Schmidt further asserts that when he sought relief in the First District, that action was also a "collateral criminal proceeding," as is the mandamus action filed in this Court because they are both simply the continuation of Schmidt's attempt to "correct or reduce his sentence."
[4] The instant case before this Court is a mandamus case, and while the federal courts have not discussed mandamus petitions in particular as concerns this question, the reason they have not is that all gain time petitions in the federal courts must be filed as habeas petitions. Therefore, we conclude that, for purposes of deciding whether the federal courts' analysis would be applicable, the fact that this case is a mandamus does not alter the appropriate analysis.
[5] Interestingly, for a time there was a split in the federal circuits, with the Seventh Circuit holding that only writ petitions which were "the functional continuation of the criminal prosecution" were exempt from the filing fee provision. See Newlin v. Helman, 123 F.3d 429 (7th Cir.1997); Thurman v. Gramley, 97 F.3d 185 (7th Cir.1996). Recently, however, the Seventh Circuit has receded from those decisions and in Walker v. O'Brien, 216 F.3d 626 (7th Cir.2000), announced that it has joined the rest of the federal circuits in giving a broader reach to the meaning of collateral criminal proceedings.
[6] See also Cinnamon Blair, Law Aims To Reduce Prisoner Lawsuits; Top 10 Frivolous Lawsuits, The Ledger, Apr. 28, 1996, at F1 (reporting that bill called for by Attorney General Bob Butterworth would allow for the imposition of a filing fee for frivolous lawsuits such as one where inmate complained that he had to watch network (instead of satellite) programs which contained violence and profanity); Phil Davis, Frivolous Inmate-Lawsuits Face Possible Legislative Crackdown, Sun Sentinel, Apr. 26, 1995 (reporting that Representative Lori Edwards was sponsoring legislation that would make inmates pay for their "onslaught" of lawsuits because there was no reason why inmates should not pay when the courthouse was "inaccessible to most middle class people" and that such lawsuits included one where an inmate complained that his pancake ration had been reduced; another in which inmate claimed he should have the right to have sex with his fellow inmates; and another in which inmate complained that a prison guard told him his wife wore a revealing dress); End the Travesties, The Florida Times-Union, Mar. 30, 1996, at A-10 ("Florida inmates have filed suit over such `abuses' as getting one bread roll at dinner instead of two, being deprived of a third pancake and [the] blatant disregard for the right to have a salad with lunch.... Fortunately, both houses of the Legislature have unanimously passed a reform bill ... [which] makes it more difficult for inmates to get legal costs waived on indigency grounds."); Michael Griffin, Inmate Lawsuit Bill Ok'd, Sent To Chiles, Orlando Sentinel, Mar. 28, 1996, at D6 (reporting that "enough is enough" and that legislators had authorized new law deterring frivolous lawsuits such as the one where an inmate sued because his dinner was served on paper plates instead of fine china).
[7] Because the Prisoner Indigency Statute (section 57.085) does not apply herein, the general indigency statute (section 57.081) does. That means that if Schmidt still seeks to proceed in forma pauperis, he must prove his inability to pay by filing an affidavit with the information required according to section 57.081. See § 57.081(a), Fla. Stat. (2001) (requiring a litigant seeking an indigency waiver of "services of the courts, sheriffs, and clerks" to file an affidavit "claiming that the applicant is indigent and unable to pay ... providing the details of the applicant's financial condition, and containing a statement that certifies that no person has been paid or promised any payment of any remuneration by the applicant for services performed on behalf of the applicant in connection with the action or proceeding").