951 So.2d 797 (2006)
Dan SCHMIDT, Petitioner,
v.
James R. McDONOUGH, etc., Respondent.
No. SC01-2252.
Supreme Court of Florida.
December 21, 2006.
Rehearing Denied March 9, 2007.
*798 Daniel Kevin Schmidt, pro se, Crestview, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, and Joy A. Stubbs, Assistant Attorney General, Tallahassee, FL, for Respondents.
PER CURIAM.
This case is before the Court on Dan Schmidt's petition for writ of mandamus. We have jurisdiction. See art. V, § 3(b)(8), Fla. Const. For reasons explained below, we deny the petition.

I. FACTS
Schmidt was convicted of a criminal offense and was sentenced to a term of imprisonment. He subsequently filed a mandamus petition in circuit court contesting a disciplinary report wherein he was disciplined for disobeying an order concerning the use of a computer in his computer class. He sought return of sixty days gain time and reinstatement into the class. After the court issued an order requiring him to pay a filing fee or to comply with the prisoner indigency statute, section 57.085, Florida Statutes (2001), *799 he filed a motion to exempt his petition from the filing fee requirement. The court denied the motion, and he filed a prohibition petition in district court seeking to bar the circuit court from dismissing his petition. The district court dismissed his prohibition petition after he failed to respond to the court's order to pay a filing fee for the district court proceeding, and the circuit court dismissed his mandamus petition after he failed to comply with that court's order to pay a filing fee or to comply with section 57.085.
Schmidt appealed the circuit court ruling, and the district court issued an order requiring him to pay an appellate filing fee or to comply with either section 57.081, Florida Statutes (2001), or section 57.085. Schmidt then filed in this Court the present mandamus petition seeking to bar the district court from dismissing his appeal. Several days later, the district court dismissed his appeal after he failed to respond to its order to pay a filing fee. This Court issued an order staying the proceedings in this Court pending resolution of Schmidt's mandamus petition in a different case, wherein the Court ultimately ruled that a prisoner's mandamus petition challenging the loss of gain time is a "collateral criminal proceeding" and is exempt from the prepayment and lien requirements of section 57.085. See Schmidt v. Crusoe, 878 So.2d 361 (Fla.2003). After Schmidt was decided, the Court issued an order in the present case asking the State to respond to Schmidt's current petition. The State now has responded, and Schmidt has replied.
Schmidt claims he is not required to comply with the certification requirements of section 57.081 or the prepayment and lien requirements of section 57.085. He also claims that a "mixed" petition  a petition where a civil claim is piggy-backed onto a gain time claim  is exempt from the prepayment and lien requirements of the prisoner indigency statute. The State, on the other hand, contends that Schmidt was wrongly decided and should be overruled.

II. THE APPLICABLE LAW

A. The Indigency Statutes

While some prisoner filings, such as habeas petitions, generally may be filed free of filing fees and other court costs, many prisoner filings are subject to such costs. See, e.g., §§ 34.041, 35.22, Fla. Stat. (2005). Both the general indigency statute, section 57.081, and the prisoner indigency statute, section 57.085, apply only to those filings that are not free of costs.
Florida's general indigency statute, section 57.081, was enacted in 1937 and contains a certification requirement for indigents:
57.081. Costs; right to proceed where prepayment of costs waived

(1) Any indigent person, except a prisoner as defined in s. 57.085, who is a party or intervenor in any judicial or administrative agency proceeding or who initiates such proceeding shall receive the services of the courts . . . with respect to such proceedings, despite his or her present inability to pay for these services. . . . Prepayment of costs to any court . . . is not required in any action if the party has obtained in each proceeding a certification of indigence in accordance with s. 27.52 or s. 57.082.[1]
*800 § 57.081, Fla. Stat. (2005) (emphasis added). Thus, under this statute, if a person is certified as indigent, the prepayment of costs is "waived."
The prisoner indigency statute, section 57.085, on the other hand, was enacted in 1996 and was intended to supplant the general indigency statute for most purposes where prisoners' civil filings are concerned, see ch. 96-106, at 92-93, Laws of Fla. The statute provides as follows in relevant part:
57.085. Deferral of prepayment of court costs and fees for indigent prisoners.
(1) For the purposes of this section, the term "prisoner" means a person who has been convicted of a crime and is incarcerated for that crime or who is being held in custody pending extradition or sentencing.
(2) When a prisoner who is intervening in or initiating a judicial proceeding seeks to defer the prepayment of court costs and fees because of indigence, the prisoner must file an affidavit of indigence with the appropriate clerk of the court. The affidavit must contain complete information about the prisoner's identity; the nature and amount of the prisoner's income; all real property owned by the prisoner; all tangible and intangible property worth more than $100 which is owned by the prisoner; the amount of cash held by the prisoner; the balance of any checking, savings, or money market account held by the prisoner; the prisoner's dependents, including their names and ages; the prisoner's debts, including the name of each creditor and the amount owed to each creditor; and the prisoner's monthly expenses. The prisoner must certify in the affidavit whether the prisoner has been adjudicated indigent under this section, certified indigent under s. 57.081, or authorized to proceed as an indigent under 28 U.S.C. s.1915 by a federal court. The prisoner must attach to the affidavit a photocopy of the prisoner's trust account records for the preceding 6 months. . . .
. . . .
(4) When the clerk has found the prisoner to be indigent but concludes the prisoner is able to pay part of the court costs and fees required by law, the court shall order the prisoner to make, prior to service of process, an initial partial payment of those court costs and fees. The initial partial payment must total at least 20 percent of the average monthly balance of the prisoner's trust account for the preceding 6 months. . . .
(5) When the clerk has found the prisoner to be indigent, the court shall order the prisoner to make monthly payments of no less than 20 percent of the balance of the prisoner's trust account as payment of court costs and fees. When a court orders such payment, the Department of Corrections or the local detention facility shall place a lien on the inmate's trust account for the full amount of the court costs and fees, and shall withdraw money maintained in that trust account and forward the money, when the balance exceeds $10, to the appropriate clerk of the court until the *801 prisoner's court costs and fees are paid in full.
. . . .
(10) This section does not apply to a criminal proceeding or a collateral criminal proceeding.

§ 57.085, Fla. Stat. (2005) (emphasis added). Thus, under this statute, if a prisoner is found to be indigent, the prepayment of costs is not waived but "deferred"  the prisoner is required to make an initial partial prepayment, if able to do so, and then a lien is placed on his or her prison account for payment of the remainder in monthly installments.

B. Schmidt v. Crusoe

Before Schmidt filed his petition in the present case, he filed a petition in the case that ultimately resulted in the Court's decision in Schmidt v. Crusoe, 878 So.2d 361 (Fla.2003). The relevant facts there were as follows:
Schmidt is serving a criminal sentence and was disciplined for allegedly having lied to prison staff. As punishment, the Department of Corrections forfeited a portion of the gain time that Schmidt had already earned as a reduction to this sentence. Schmidt filed a mandamus petition in the circuit court contesting the forfeiture. The circuit court sought a filing fee or an affidavit of indigency and a printout of Schmidt's inmate account pursuant to the Prisoner Indigency Statute. See § 57.085, Fla. State. (2002). Schmidt responded that he was not subject to these requirements because his petition was not a civil lawsuit, but rather was a "collateral criminal proceeding" exempted under the statute. See § 57.085(10), Fla. Stat. (2002). When the circuit court rejected this contention, Schmidt sought review by a petition for writ of prohibition in the First District court of Appeal. The district court also invoked the statute and advised Schmidt that his case would be dismissed if compliance or a filing fee was not forthcoming. Schmidt then filed a petition in this Court, and we stayed proceedings pending consideration of the merits of his petition and the responses thereto.
Schmidt v. Crusoe, 878 So.2d at 362.
After reviewing both the comparable federal precedent and the legislative history of Florida's prisoner indigency statute, the Court concluded that the Florida statute was enacted to discourage the filing of frivolous civil lawsuits involving challenges to prison conditions, "but not to prevent the filing of claims contesting the computation of criminal sentences." See Schmidt, 878 So.2d at 366. The Court held as follows:
In the instant case, Schmidt's loss of gain time effectively lengthened his sentence, since by the Department of Corrections' action he now has to serve that additional time in prison. Therefore, we agree, in accord with the authorities discussed above, that his gain time challenge should be considered a "collateral criminal proceeding," and the Prisoner Indigency Statute should not apply. To hold otherwise would result in an unlawful "`chilling' of a criminal defendant's right to appeal or otherwise challenge the propriety or constitutionality of the conviction or sentence," Geffken v. Strickler, 778 So.2d 975, 977 n. 5 (Fla. 2001), and raise a serious issue as to criminal defendants' constitutional rights of access to the courts to challenge their sentences.
Schmidt, 878 So.2d at 367 (footnote omitted).

III. THE PRESENT CASE
In the present case, Schmidt asks the Court to compel the district court to reinstate his appeal. First, he claims that he is not required to comply with the *802 certification requirements of section 57.081 or the prepayment and lien requirements of section 57.085 because his underlying mandamus petition is a "collateral criminal proceeding" and is in the nature of a habeas petition. We agree, but only in part. As for this claim with respect to section 57.085, Schmidt is correct concerning the gain time issue. As noted above, the Court in Schmidt held that a mandamus petition challenging the revocation of gain time is a "collateral criminal proceeding" and is exempt from the prepayment and lien requirements of section 57.085. However, as for Schmidt's claim with respect to section 57.081, he is incorrect concerning the gain time issue. The Court in Schmidt expressly limited its "collateral criminal proceeding" ruling to the prisoner indigency statute and did not include the general indigency statute:
[W]e grant the petition and hold that an inmate's petition for writ of mandamus challenging a loss of gain time is a collateral criminal proceeding and not a civil lawsuit as contemplated by the Prisoner Indigency Statute.

Schmidt, 878 So.2d at 361-62 (emphasis added). In fact, the Court in footnote 7 specifically stated that the general indigency statute, section 57.081, is applicable to gain time claims such as Schmidt's:
Because the Prisoner Indigency Statute (section 57.085) does not apply herein, the general indigency statute (section 57.081) does. That means that if Schmidt still seeks to proceed in forma pauperis, he must prove his inability to pay by filing an affidavit with the information required according to section 57.081. See § 57.081(a), Fla. Stat. (2001).
Schmidt, 878 So.2d at 367 n. 7.
Schmidt's argument that footnote 7 conflicts with the plain language of section 57.081, which excepts prisoners' filings from its scope, also lacks merit. The language in section 57.081 excepting prisoners' filings applies only to those filings that are otherwise subject to the prepayment and lien requirements of section 57.085, which is not the situation in the present case:
(1) Any indigent person, except a prisoner as defined in s. 57.085, who is a party or intervenor in any judicial or administrative agency proceeding or who initiates such proceeding shall receive the services of the courts . . . with respect to such proceedings, despite his or her present inability to pay for these services. . . . Prepayment of costs to any court . . . is not required in any action if the party has obtained in each proceeding a certification of indigence in accordance with s. 27.52 or s. 57.082.
§ 57.081, Fla. Stat. (2005) (emphasis added). This construction of the above provision is supported by the enacting legislation. See ch. 96-106, §§ 1-2, at 92-95, Laws of Fla. (amending the general indigency statute to include the above exception and simultaneously creating the prisoner indigency statute).
Next, Schmidt claims that a "mixed" petition  a petition where a civil claim is piggy-backed onto a gain time claim  is exempt from the prepayment and lien requirements of the prisoner indigency statute. This claim, however, also lacks merit. The Court's reasoning in Schmidt that gain time claims are "collateral criminal proceedings" that are exempt from the requirements of the prisoner indigency statute was based on the practical effect that gain time claims have on the length of time an inmate actually serves in prison. That reasoning is inapplicable to civil claims, such as Schmidt's present claim that he is entitled to be reinstated into the prison computer class, which are unrelated to the length of time an inmate serves in prison. Also, exempting "mixed" *803 petitions from the requirements of the prisoner indigency statute would violate the plain language of section 57.085, which provides for a single exception to its prepayment and lien requirements: "This section does not apply to a criminal proceeding or a collateral criminal proceeding." § 57.085(10), Fla. Stat. (2005). The statute makes no exception for prisoners' civil claims, whether standing alone or piggy-backed onto gain time claims. Further, the original purpose of section 57.085 was to discourage the filing of frivolous civil claims by prisoners, see ch. 96-106, preamble, at 92-93, Laws of Fla. If the Court were to hold that "mixed" petitions are exempt from the prepayment and lien requirements of section 57.085, such a ruling would undermine that purpose by inviting the filing of frivolous civil claims that are piggy-backed onto gain time claims. Finally, we reject the State's claim that Schmidt should be overruled; the State's complaint that language in the decision may be read as inviting prisoners to file frivolous civil claims under the rubric of Schmidt has been addressed above.

IV. CONCLUSION
Based on the foregoing, we hold that the filing of a mandamus petition raising a gain time claim is not free of costs, and that although such petitions are exempt from the prepayment and lien requirements of the prisoner indigency statute, section 57.085, they continue to be subject to the certification requirements of the general indigency statute, section 57.081. We also hold that "mixed" petitions  petitions where civil claims are piggy-backed onto gain time claims  are not exempt from the prepayment and lien requirements of the prisoner indigency statute.
In the present case, although Schmidt's gain time claim is exempt from the prepayment and lien requirements of the prisoner indigency statute, the claim remains subject to the certification requirements of the general indigency statute. Furthermore, because the underlying mandamus petition in this case is a "mixed" petition, containing both a gain time claim and a civil claim, the petition itself is subject to the prepayment and lien requirements of the prisoner indigency statute. Accordingly, we deny Schmidt's present petition.
It is so ordered.
LEWIS, C.J., and ANSTEAD, PARIENTE, CANTERO, and BELL, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion, in which QUINCE, J., concurs.
WELLS, J., concurring in part and dissenting in part.
I concur that Schmidt's petition is subject to the prepayment and lien requirements of the prisoner indigency statute.
I dissent to the majority's determination that we have jurisdiction in this case. As I stated in my dissent in Schmidt v. Crusoe, 878 So.2d 361 (Fla.2003), that case was not properly before this Court as a writ of mandamus, and the deciding of that case as a writ has proven to have various problems in administration. See Bush v. State, 945 So.2d 1207 (Fla. 2006). I do not believe we should keep open this type of jurisdiction, and I do not understand how the present case is properly before this Court on a writ of mandamus.
QUINCE, J., concurs.
NOTES
[1] 1. Both sections 27.52 and 57.082 provide that a person seeking relief from the payment of court costs due to inability to pay must apply to the clerk of court for a determination of indigency status and the application must include the following information:

1. Net income, consisting of total salary and wages, minus deductions required by law, including court-ordered support payments.
2. Other income, including, but not limited to, social security benefits, union funds, veterans' benefits, workers' compensation, other regular support from absent family members, public or private employee pensions, unemployment compensation, dividends, interest, rent, trusts, and gifts.
3. Assets, including, but not limited to, cash, savings accounts, bank accounts, stocks, bonds, certificates of deposit, equity in real estate, and equity in a boat or a motor vehicle or in other tangible property.
4. All liabilities and debts.
§§ 27.52(1), 57.082(1), Fla. Stat. (2005). Section 27.52(1) contains an additional provision 5: "If applicable, the amount of any bail paid for the applicant's release from incarceration and the source of the funds."