[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Nov. 20, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-17146
Non-Argument Calendar

_____

D. C. Docket No. 07-00281-CV-5-RS/MD

DANIEL KEVIN SCHMIDT,

Petitioner-Appellant,

versus

WALTER A. MCNEIL,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(November 20, 2009)

Before TJOFLAT, WILSON and FAY, Circuit Judges.

PER CURIAM:

Daniel Kevin Schmidt, a Florida state prisoner proceeding pro se, appeals from the district court's denial of his habeas corpus petition filed under 28 U.S.C. § 2254. On appeal, Schmidt argues that the district court erred by denying his petition pursuant to its finding that the Florida state courts denied him relief based on an adequate and independent state procedural ground. Specifically, Schmidt argues that the last state court to consider his claims, the Florida Supreme Court, applied newly announced procedural rules in denying him relief. For the reasons set forth below, we vacate and remand.

## I.

In November 2007, Schmidt, proceeding pro se, filed a petition under 28 U.S.C. § 2254, alleging that his federal rights had been violated with respect to prison disciplinary proceedings. In his petition, Schmidt explained that he had been issued a disciplinary report for his alleged violation of computer lab policies. He asserted that, after a disciplinary hearing, he was acquitted of committing the policy violation, but was later convicted of the alleged violation based on the same evidence at a second disciplinary hearing. Schmidt argued that his conviction obtained at the second disciplinary hearing violated the Fifth Amendment's Double Jeopardy Clause and his right to due process under the Fourteenth Amendment. Schmidt alleged that, as a result of this conviction, he lost 60 days of accrued "gain

2

time" that otherwise would have operated to reduce the amount of time he would serve in prison, and was also denied the award of an additional 25 days of gain time. He requested relief in the form of restoration of the gain time he lost due to his conviction for violation of the prison computer lab policies.

The Florida Department of Corrections ("DCC"), represented by the Florida Attorney General, responded to Schmidt's petition, generally asserting that the district court should deny relief because the Florida state courts denied Schmidt's mandamus petition based on an adequate and independent state procedural ground. Both Schmidt and the DCC attached exhibits to their pleadings, which detailed the state court proceedings in this case.

The exhibits submitted by Schmidt and the DCC demonstrated the following: After Schmidt's second disciplinary proceeding and resulting conviction, he filed grievances to the prison warden and the Secretary for the Florida Department of Corrections, which were denied. Schmidt subsequently filed a petition for a writ of mandamus in the circuit court, alleging that: (1) the prison disciplinary committee lacked sufficient evidence to convict him of a policy violation; (2) he was subjected to "multiple" and unauthorized punishments; and (3) he was the victim of discrimination or reverse discrimination because he was not returned to the computer class in which his alleged policy violation occurred.

3

Schmidt requested that his gain time be restored and that he be returned to the computer course. The circuit court issued a case management order directing Schmidt to pay filing fees or submit an affidavit of indigency, pursuant to Fla. Stat. § 57.085 (the "Prisoner Indigency Statute"). Schmidt filed a motion requesting that the circuit court find that his petition was not subject to filing-fee requirements. The court denied the motion, and ultimately dismissed Schmidt's mandamus petition because he failed to pay filing fees or an affidavit of indigency.

Before the circuit court dismissed his petition, Schmidt filed a writ of prohibition in the First District Court of Appeal ("DCA"), requesting that the DCA prohibit the circuit court from dismissing his petition due to his failure to comply with the Prisoner Indigency Statute. He also filed a notice of appeal to the DCA from the circuit court's ultimate dismissal of his mandamus petition. The DCA entered an order stating that it would not allow Schmidt's action in the appellate court to proceed until he either: (1) submitted a copy of a circuit court order permitting him to proceed as an indigent; (2) paid filing fees to the DCA; or (3) filed an affidavit of indigency in the circuit court under Fla. Stat. § 57.085 or § 57.081, whichever was applicable. The DCA stated that, if Schmidt failed to comply with its order, it would dismiss his petition pursuant to Fla. Stat. § 35.22 and Fla.R.App.P. 9.410. Schmidt filed a motion requesting that the appellate court

4

find that his proceeding was not subject to filing-fee requirements. The DCA denied his motion without prejudice to his filing an affidavit of indigency in the circuit court. Schmidt did not comply with this order, and the DCA ultimately dismissed his appeal due to his failure to comply with the court's filing-fee requirements.

Before the DCA dismissed Schmidt's appeal, Schmidt filed a petition for a writ of mandamus to the Florida Supreme Court, requesting that the court bar the DCA from dismissing his appeal. In October 2001, the Florida Supreme Court stayed Schmidt's mandamus proceeding pending a decision in another case to which Schmidt was a party, Schmidt v. Crusoe, 878 So.2d 361 (Fla. 2003) ("Schmidt I"). In 2003, the court decided Schmidt I, holding that a prisoner's mandamus petition that raised a challenge to his loss of gain time was not subject to the requirements of the Prisoner Indigency Statute, but was subject to the requirements of Fla. Stat. § 57.081 (the "General Indigency Statute").

In 2006, the court rendered its decision in the present case, applying Schmidt I to hold that Schmidt's mandamus petition was subject to the General Indigency Statute, but not the Prisoner Indigency Statute. In addition, the court characterized Schmidt's mandamus petition as a "mixed" petition raising both a gain-time claim and a civil claim. Thus, the court reasoned that, although Schmidt's gain-time

5

claim was subject only to the requirements of the General Indigency Statute, his petition as a whole was subject to the more rigorous requirements of the Prisoner Indigency Statute. The court denied relief because Schmidt failed to comply with either statute, and did not grant him permission to refile his mandamus petition in the circuit court.

Based on these facts, the magistrate judge entered a report and recommendation in which he recommended that the district court deny relief because the DCA had dismissed Schmidt's appeal from the circuit court based on adequate and independent state grounds – Fla.R.App.P. 9.410 and Fla. Stat. § 35.22. Schmidt filed written objections to the report and recommendation, arguing, among other things, that the Florida Supreme Court's decision did not rest on adequate and independent state procedural grounds because the court applied new procedural roles to his mandamus proceeding. The district court adopted the report and recommendation over Schmidt's objections and denied relief.

After the court denied Schmidt's construed motion for a certificate of appealability ("COA"), Schmidt applied to this Court for a COA. We granted a COA as the following issue only: "Whether the district court erred in determining that the state court's dismissal of Schmidt's petition on procedural grounds constituted an adequate and independent state rule, so as to preclude federal habeas

6

review?"

## II.

The issue of whether a petitioner has procedurally defaulted a claim under 28 U.S.C. § 2254 is a mixed question of law and fact that we review de novo. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). Regardless of whether a state prisoner's habeas petition should be construed pursuant to 28 U.S.C. § 2241 or § 2254, the procedural requirements applicable to § 2254 petitions, including exhaustion, apply. Medberry v. Crosby, 351 F.3d 1049, 1052-53, 1058-62 (11th Cir. 2003).

In order to file a habeas corpus petition under 28 U.S.C. § 2254, a state prisoner must first exhaust all available state court remedies. 28 U.S.C. § 2254(b)(1); See Duncan v. Henry, 513 U.S. 364, 364-65, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995). In order to satisfy the exhaustion requirement, the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999). An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered to be procedurally defaulted. Id. at 839-40, 848, 119 S.Ct. at 1734; Bailey v. Nagle, 172 F.3d 1299,

7

1302-03 (11th Cir. 1999).

Procedural default may occur where the state court correctly applies a procedural principle of state law and concludes that the petitioner's federal claims are barred. Bailey, 172 F.3d at 1302-03. A federal court is not required to honor a state's procedural default ruling, however, unless that ruling rests on adequate state grounds that are independent of a federal question. See Harris v. Reed, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989).

We employ a three-part test to determine whether a state's procedural ruling constitutes an adequate and independent state rule of decision. Judd, 250 F.3d at 1313. "First, the last state court to render judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim." Id. Second, the state court's decision must rest entirely on state law grounds and not be intertwined with an application of federal law. Id. "Finally, the state procedural rule must be adequate; i.e., it must not be applied in an arbitrary or unprecedented fashion." Id. In other words, the rule must be "firmly established and regularly followed." Ford v. Georgia, 498 U.S. 411, 423-25, 111 S.Ct. 850, 857-58, 112 L.Ed.2d 935 (1991). A state procedural rule is not "firmly established" where the rule is novel or newly announced. Id. at 423-24, 111 S.Ct. at 857-58. In addition, in order to be

8

considered adequate, the procedural rule cannot be manifestly unfair in its treatment of the petitioner's constitutional claim. Judd, 250 F.3d at 1313.

Under Florida law, a prisoner may bring a constitutional challenge to a prison disciplinary decision by filing a petition for a writ of mandamus in the state circuit court. See Drayton v. Moore, 807 So.2d 819, 821 (2d Dist. Ct. App. 2002). Pursuant to Florida's "Prisoner Indigency Statute," Fla. Stat. § 57.085, a prisoner who wishes to litigate in state court and avoid the prepayment of filing fees is required, among other things, to file an affidavit of indigence. Fla. Stat. § 57.085 (1), (2). This statute does not apply to criminal proceedings or collateral criminal proceedings. Fla. Stat. § 57.085(10). Under Florida's General Indigency Statute, any indigent litigant, except those subject to the Prisoner Indigency Statute, must obtain a certificate of indigence in order to be exempt from the prepayment of filing fees. Fla. Stat. § 57.081(1). Prior to 1996, Florida's General Indigency Statute applied to all indigent litigants, including prisoners. Vickson v. Singletary, 734 So.2d 376, 377 n.2 (Fla. 1999). During 1996, however, the Florida legislature "amended section 57.081 to exclude prisoners and created section 57.085 to apply exclusively to prisoners." Id.; see also Quigley v. Butterworth, 708 So.2d 270, 271 n.1 (Fla. 1998). As noted above, the Florida Supreme Court held in Schmidt I in 2003 that a mandamus petition challenging a prisoner's loss of gain-time was

9

subject to the General Indigency Statute, but not the Prisoner Indigency Statute. Schmidt, 878 So.2d at 367, n.7.

Our review of Florida state law reveals that state courts applied the General Indigency Statute to prisoners' mandamus petitions raising gain-time claims only after Schmidt I was decided in 2003. See, e.g., Cason v. Crosby, 892 So.2d 536, 536-37 (1st Dist. Ct. App. 2005) (explaining that the Florida Supreme Court held, in Schmidt I, that a prisoner's mandamus petition challenging the loss of gain time was not subject to § 57.085, but was subject to § 57.081); Hughes v. Weiss, 870 So.2d 87, 88 (2d Dist. Ct. App. 2003) (same); Drayton, 807 So.2d at 821 (noting that the circuit court dismissed the prisoner's petition for a writ of mandamus, which raised a due process challenge to a prison disciplinary proceeding, pursuant to § 57.085); Jackson v. Florida Dep't of Corrections, 790 So.2d 381, 382-83 (Fla. 2000) (noting that the court had applied to § 57.085 to a prisoner's petition for a writ of mandamus challenging an action taken by the Florida Department of Corrections).

In addition, the Florida Supreme Court appeared to announce its rule concerning the application of the Prisoner Indigency Statute to a "mixed" mandamus petition for the first time when considering the present case. See Schmidt v. McDonough, 951 So.2d 797, 802-03 (Fla. 2006) ("Schmidt II"); see

10

also <u>Smith v. Florida Dept. of Corrections</u>, 974 So.2d 1110, 1112 (Fla.App. 1 Dist. 2007) (noting that, in <u>Schmidt II</u>, the Florida Supreme Court rejected the proposition that a "mixed" mandamus petition was not subject to the Prisoner Indigency Statute).

**III.**

Here, the Florida Supreme Court, which was the last state court to consider Schmidt's claims, clearly and expressly stated that it dismissed his petition for a writ of mandamus based on two state procedural grounds: (1) under <u>Schmidt I</u>, Schmidt's gain time claim in the present case was subject to the General Indigency Statute, with which Schmidt failed to comply; and (2) Schmidt's petition was "mixed" because it presented both a gain-time and civil claim and, as a result, the petition as a whole was subject to the Prisoner Indigency Statute, with which Schmidt failed to comply.

Because the Florida Supreme Court's decision rested on state procedural grounds that were not intertwined with federal law, the procedural grounds at issue in this case were independent. The Florida Supreme Court's decision did not, however, rest on adequate state grounds. It is true that, at the time the Florida Supreme Court decided the present case, its decision in <u>Schmidt I</u> had been established and followed by state courts for three years. Schmidt, however, filed

11

his petition for a writ of mandamus to the Florida Supreme Court in this case before the court decided Schmidt I, and the court stayed its decision in the present case until after it decided Schmidt I. Accordingly, in the present case, Schmidt was not provided with the opportunity to comply with Schmidt I's holding that a prisoner filing a mandamus petition challenging his loss of gain time must comply with the General Indigency Statute, particularly because the Florida Supreme Court did not provide him with the opportunity to refile his mandamus petition in the state circuit court.

In addition, the Florida Supreme Court appeared to announce its rule concerning the application of the Prisoner Indigency Statute to a "mixed" mandamus petition for the first time when considering the present case. Accordingly, this procedural ground was also not adequate to bar federal review of Schmidt's claims because it constituted a novel application of the Prisoner Indigency Statute that was not well-established or regularly followed when the Florida Supreme Court considered this case.

**Conclusion**

Because the district court erred in determining that the last state court to consider Schmidt's claims denied relief based on an adequate state procedural ground, we vacate and remand this case so that the district court may consider the

12

merits of Schmidt's constitutional claims.

**VACATED AND REMANDED.**