997 So.2d 343 (2008)
Walter A. McNEIL, Petitioner,
v.
Leo J. COX, etc., Respondent.
No. SC06-301.
Supreme Court of Florida.
December 4, 2008.
*344 Bill McCollum, Attorney General, Steven Todd Gold, Deputy Solicitor General, and Joy A. Stubbs, Assistant Attorney General, Tallahassee, FL, and Susan A. Maher, Deputy General Counsel, Department of Corrections, Tallahassee, FL, for Petitioner.
Stephen H. Grimes and Matthew H. Mears of Holland and Knight, LLP, Tallahassee, FL, for Respondent.
PER CURIAM.
We have for review Cox v. Crosby, 31 Fla. L. Weekly D310, ___ So.2d ___, 2006 WL 176681 (Fla. 1st DCA Jan.26, 2006), wherein the district court certified the following question, which we have rephrased as follows:
Does the holding in Schmidt v. Crusoe, 878 So.2d 361 (Fla.2003), extend to all gain time actions, regardless of their nature, in which, if successful, the complaining party's claim would directly affect his or her time in prison, so to preclude imposition of a lien on the inmate's trust account to recover applicable filing fees?
Id. at D311, ___ So.2d at ___. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We answer the question as rephrased above in the affirmative and approve the decision of the district court.

I. BACKGROUND
Based on a crime committed on April 16, 1995, Cox was convicted of second-degree murder and was sentenced to twenty years' imprisonment. The conviction and sentence were affirmed. See Cox v. State, 737 So.2d 1080 (Fla. 1st DCA 1999) (table decision). In 2003, Cox filed in this Court a petition for writ of habeas corpus challenging the constitutionality of the Safe Streets Initiative of 1994 (the Act), which inter alia amended section 944.275, Florida Statutes (1993), to restrict the awarding of basic gain time to only those prisoners who were sentenced for crimes committed prior to January 1, 1994. See ch. 93-406, § 26, at 2958-60, Laws of Fla. Cox claimed that the Act violated the single-subject provision of article III, section 6, Florida Constitution, and that he had been unlawfully deprived of more than five years of basic gain time under the Act. The Court transferred the petition to the circuit court, which treated the filing as a petition *345 seeking both declaratory relief (with respect to the single-subject claim) and mandamus relief (with respect to the gain time claim). The court found Cox to be indigent and applied the prepayment and lien requirements of the prisoner indigency statute, section 57.085, Florida Statutes (2005). The court denied the petition.
Cox filed a notice of appeal and a motion to proceed as indigent. The circuit court certified Cox as indigent for appellate purposes and again determined that the prisoner indigency statute was applicable. Cox filed in the district court a "Motion for Review," wherein he argued that, under Schmidt v. Crusoe, 878 So.2d 361 (Fla. 2003) (Schmidt I), his proceedings in both the circuit and district courts were "collateral criminal proceedings" and not subject to the prisoner indigency statute. The district court withheld ruling on the merits of the underlying claim, granted relief on the indigency issue, and certified the above question, which we have rephrased. The Department of Corrections (Department) sought review and argues that Schmidt I applies to only those cases where the length of time an inmate serves in prison is extended as a result of the forfeiture of gain time in an adversarial administrative proceeding. The Court stayed this proceeding pending resolution of Schmidt v. McDonough, 951 So.2d 797 (Fla.2006) (Schmidt II), and Bush v. State, 945 So.2d 1207 (Fla.2006), which stay has since been lifted.

II. THE APPLICABLE LAW
While some prisoner filings, such as habeas petitions, generally may be filed free of filing fees and other court costs, many prisoner filings are subject to such costs. See, e.g., §§ 34.041, 35.22, Fla. Stat. (2005). Florida's indigency statutes apply only to those filings that are not free of cost. The present case implicates two indigency statutes: the general indigency statute, section 57.081, Florida Statutes (2005), and the prisoner indigency statute, section 57.085. These statutes differ in a key respect. Under the general indigency statute, which was enacted in 1937, if a person is certified as indigent, the prepayment of costs is "waived." See § 57.081, Fla. Stat. (2005). Under the prisoner indigency statute, which was enacted in 1996, if a prisoner is found to be indigent, the prepayment of costs is "deferred," i.e., the prisoner is required to make an initial prepayment, if able to do so, and then a lien is placed on his or her prison account for payment of the remainder in monthly installments. See § 57.085, Fla. Stat. (2005). The prisoner indigency statute was intended to supplant the general indigency statute for most purposes where prisoners' civil filings are concerned, see ch. 96-106, at 92-93, Laws of Fla., and the statute provides as follows: "This section does not apply to a criminal proceeding or a collateral criminal proceeding." See § 57.085(10), Fla. Stat. (2005) (emphasis added).
The seminal case in this area is Schmidt I, and the relevant facts there are as follows:
Schmidt is serving a criminal sentence and was disciplined for allegedly having lied to prison staff. As punishment, the Department of Corrections forfeited a portion of the gain time that Schmidt had already earned as a reduction to this sentence. Schmidt filed a mandamus petition in the circuit court contesting the forfeiture. The circuit court sought a filing fee or an affidavit of indigency and a printout of Schmidt's inmate account pursuant to the Prisoner Indigency Statute. See § 57.085, Fla. State. (2002). Schmidt responded that he was not subject to these requirements because his petition was not a civil lawsuit, but rather was a "collateral *346 criminal proceeding" exempted under the statute. See § 57.085(10), Fla. Stat. (2002). When the circuit court rejected this contention, Schmidt sought review by a petition for writ of prohibition in the First District Court of Appeal. The district court also invoked the statute and advised Schmidt that his case would be dismissed if compliance or a filing fee was not forthcoming. Schmidt then filed a petition in this Court, and we stayed proceedings pending consideration of the merits of his petition and the responses thereto.
Schmidt I, 878 So.2d at 362.
After reviewing the comparable federal precedent and the legislative history of the prisoner indigency statute, the Court concluded that the Florida statute, like the federal statute, was enacted to discourage the filing of frivolous civil lawsuits involving challenges to prison conditions, such as "peanut butter,"[1] "pancake,"[2] "dinner roll,"[3] "salad,"[4] "fine china,"[5] "satellite television,"[6] and "shoe brand"[7] claims, "but not to prevent the filing of claims contesting the computation of criminal sentences." Id. at 366. The Court then noted that "an action affecting gain time does in fact affect the computation of a criminal defendant's sentence, because the length of time the inmate will actually spend in prison is directly affected." Id. The Court held as follows: "[W]e conclude that a gain time challenge is analogous to a collateral challenge to a sentence in a criminal proceeding because the end result is the samethe inmate's time in prison is directly affected." Id. at 367.
The Court later clarified this holding in the two cases noted above. First, the Court in Schmidt II explained that (a) although prisoner gain time claims are not subject to the prepayment and lien requirements of the prisoner indigency statute, such claims generally are subject to the certification requirements of the general indigency statute, section 57.081, Florida Statutes (2005); and (b) prisoner civil claims cannot be piggy-backed onto gain time claims to evade the prepayment and lien requirements of the prisoner indigency statute, i.e., "mixed" petitions must comply with the prisoner indigency statute. See Schmidt II, 951 So.2d at 803. And second, the Court in Bush noted the special meaning given the phrase "collateral criminal proceeding" under section 57.085:
Although the Court in Schmidt did state that "an inmate's petition for writ of mandamus challenging a loss of gain time is a collateral criminal proceeding and not a civil lawsuit," 878 So.2d at 361, the Court did so in the context of the prisoner indigency statute, and the statement, which was necessitated by the structure of the statute itself, is limited to that context. As drafted, there is only one exception to the prepayment *347 and lien requirements of the prisoner indigency statute: "This section does not apply to a criminal proceeding or a collateral criminal proceeding." § 57.085(10), Fla. Stat. (2005). In order to give effect to the legislative intent underlying the statute, which was to diminish frivolous civil filings but not to diminish legitimate challenges to sentence-reducing credit determinations, the Court in Schmidt was constrained to hold that the statutory exception was applicable to Schmidt's mandamus petition challenging the forfeiture of gain time. To hold otherwise would have violated legislative intent.
Bush, 945 So.2d at 1213. The Court then held that (a) the proper remedy for most prisoner gain time claims continues to be a mandamus petition filed in circuit court; (b) the proper venue for such petitions is in Leon County; and (c) transfer rather than dismissal is the preferred remedy where improper venue is sought in such cases. See id. at 1215.

III. THE PRESENT CASE
In the present case, the district court held that under Schmidt I Cox's circuit court proceeding was a "collateral criminal proceeding" and is not subject to the prepayment and lien requirements of the prisoner indigency statute:
Here, if appellant's claim is successful the result would be that his time in prison would be "directly affected," i.e., significantly reduced. We are, therefore, constrained to conclude that this proceeding is a "collateral criminal" one as defined by our supreme court in Schmidt. Accordingly, we grant appellant's motion for review and reverse the trial court's order to the extent it imposes a lien on his inmate trust account to recover applicable filing fees.
Cox, 31 Fla. L. Weekly at D311, ___ So.2d at ___. The district court certified the above question, which we have rephrased, and Judge Hawkes filed a dissent wherein he raised several objections, discussed below. See id. at D311-12, at ___ (Hawkes, J., dissenting).
The Department argues that the Court should answer the certified question in the negative, quash the district court decision, and adopt the reasoning of the dissent. First, the Department contends that the present case differs from Schmidt I in several ways: (a) whereas the prisoner in Schmidt I challenged the decision of the Department to revoke his gain time, Cox challenges the constitutionality of a legislative act; (b) whereas the prisoner in Schmidt I was seeking to recover gain time that had already been awarded, Cox is seeking to obtain gain time that has never been awarded; (c) whereas Schmidt was required to act within rigid time frames, Cox is not required to do so; and (d) whereas Schmidt's claim was based on unique facts peculiar to his case, Cox's claim involves general facts that apply to other prisoners as well. Second, the Department contends that the test used by the district court for applying the prisoner indigency statute is an incorrect standard and will open the floodgates to prisoners' statutory validity claims. And third, the Department contends that to allow prisoners to file such actions free of cost, while requiring private citizens to pay filing fees and court costs for other similar actions, is fundamentally unfair.
Based on the analysis in Schmidt I, however, we conclude that each of the Department's arguments misses the mark. First, the procedural posture of the prisoners in Schmidt I and Cox is sufficiently similar for section 57.085 purposes. Both prisoners challenged the underlying grounds for the revoking or withholding of *348 gain timeSchmidt challenged the validity of a disciplinary report; Cox challenges the validity of a legislative act as it relates to gain timeand it is irrelevant under Schmidt I whether the claims involve "revoked" gain time versus "withheld" gain time, or whether the prisoners acted within rigid time frames versus general time frames, or whether the cases involve unique facts versus general facts. Rather, the analysis in Schmidt I is clear-cut: the prisoner indigency statute was intended "to discourage the filing of frivolous civil lawsuits" with respect to prison conditions, not "to prevent the filing of claims contesting the computation of criminal sentences." 878 So.2d at 366. None of the factors cited by the Department relates to the bright-line test under Schmidt Ii.e., whether "the amount of time an inmate has to actually spend in prison ... is directly affected." Id. at 367.
Second, the standard used by the district court below was not incorrect, nor will it open the floodgates to prisoners' statutory validity claims with respect to gain time. As noted above, the standard used by the court in Cox, see 31 Fla. L. Weekly at D11, at ___ ("[I]f appellant's claim is successful the result would be that his time in prison would be `directly affected,' i.e., significantly reduced."), is virtually identical to the standard used by the Court in Schmidt I. See 878 So.2d at 366 ("[A]n action affecting gain time does in fact affect the computation of a criminal defendant's sentence, because the length of time the inmate will actually spend in prison is directly affected."). And as for opening the floodgates to such claims, no prisoner indigency statute was in existence prior to 1996, and the Department offers no proofnor does the Department even suggestthat Florida courts prior to that date were flooded with prisoners' statutory validity claims with respect to gain time. Nothing in Schmidt I hints at such a circumstance.
And third, as for the Department's argument that it is unfair to allow prisoners to file statutory validity claims with respect to gain time at no cost while requiring private citizens to pay filing fees and court costs for other statutory validity claims, this argument overlooks the plain language of the general indigency statute:
(1) Any indigent person, except a prisoner as defined in s. 57.085, who is a party or intervenor in any judicial or administrative agency proceeding or who initiates such proceeding shall receive the services of the courts ... with respect to such proceedings, despite his or her present inability to pay for these services. ... Prepayment of costs to any court ... is not required in any action if the party has obtained in each proceeding a certification of indigence in accordance with s. 27.52 or s. 57.082.
§ 57.081, Fla. Stat. (2005) (emphasis added). Under this statute, all indigent personswhether eligible prisoners or private citizensare treated equally: all are entitled to proceed in court without prepayment of costs.

IV. CONCLUSION
Based on the foregoing, we answer the certified question as rephrased in the affirmative and approve the decision of the district court. We hold that Schmidt v. Crusoe, 878 So.2d 361 (Fla.2003), is applicable to all claims that, if successful, will directly affect "the length of time the inmate will actually spend in prison." Id. at 366. Such claims constitute "collateral criminal proceedings" for purposes of section 57.085, Florida Statutes (2005), as explained in Bush v. State, 945 So.2d 1207, 1213 (Fla.2006).
It is so ordered.
*349 QUINCE, C.J., and WELLS, ANSTEAD, PARIENTE, and LEWIS, JJ., concur.
CANADY, J., concurs in result only.
POLSTON, J., did not participate.
NOTES
[1] See Schmidt I, 878 So.2d at 364 (noting a prisoner's challenge to the use of "creamy" versus "chunky" peanut butter).
[2] See id. at 366 n. 6 (noting a prisoner's challenge to a two-pancake limit per meal).
[3] See id. (noting a prisoner's challenge to a one-dinner roll limit per meal).
[4] See id. (noting a prisoner's challenge to a lunch menu that offered no salad with the meal).
[5] See id. (noting a prisoner's challenge to meals served on paper plates versus fine china).
[6] See id. (noting a prisoner's challenge to the availability of network versus satellite television).
[7] See id. at 365 (noting a prisoner's challenge to the use of Reebock versus Converse brand shoes).