48 So.3d 714 (2010)
FLORIDA PAROLE COMMISSION, Petitioner,
v.
Joseph Robert SPAZIANO, Respondent.
No. SC06-1252.
Supreme Court of Florida.
October 14, 2010.
*715 Sarah J. Rumph, General Counsel and Susan Schwartz, Assistant General Counsel, The Florida Parole Commission, Tallahassee, FL, for Petitioner.
James M. Russ and Terrence E. Kehoe, Orlando, FL, for Respondent.
LABARGA, J.
This case is before the Court for review of the decision of the First District Court of Appeal in Spaziano v. Florida Parole Commission, 46 So.3d 576 (1st DCA 2006). In its decision, the district court certified a question of great public importance, which we have rephrased as follows:
DOES THE EXEMPTION IN SECTION 57.085(10), FLORIDA STATUTES, APPLY TO ANY INMATE ACTIONS CHALLENGING THE FLORIDA PAROLE COMMISSION'S DETERMINATION OF THE INMATE'S PRESUMPTIVE PAROLE RELEASE DATE, THEREBY PRECLUDING IMPOSITION OF A LIEN ON THE INMATE'S TRUST ACCOUNT TO RECOVER APPLICABLE COURT FILING FEES?
See 46 So.3d at 582.[1] We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We answer the certified question in the affirmative and approve the decision of the district court. As we explain below, an action challenging the Florida Parole Commission's determination of an inmate's presumptive parole release date is a collateral criminal proceeding for the purposes of section 57.085(10), Florida Statutes (2009), *716 which exempts such proceedings from the fee and lien provisions of section 57.085.

BACKGROUND
Joseph Spaziano, an inmate currently incarcerated at the Taylor Correctional Institution, is serving a life sentence for "forcible carnal knowledge," a sexual offense, committed in 1975. Under the law in effect when he was sentenced, he is eligible to be considered for parole. In October of 2004, Spaziano filed a petition for writ of mandamus in the circuit court of the Second Judicial Circuit challenging the correctness of the Florida Parole Commission's determination of his presumptive parole release date (PPRD). The Florida Parole Commission ("the Commission") determined that Spaziano's PPRD is April 28, 2060.
Spaziano's PPRD of April 28, 2060, was originally determined in 1999. After a hearing before the Commission in 2004, that date was confirmed by the Commission in an order dated February 27, 2004.[2] Spaziano filed his mandamus petition in the circuit court, alleging errors in the factors upon which his PPRD was based, but the circuit court denied the writ.[3] After determining that Spaziano was indigent and could not prepay court fees, the circuit court entered an order pursuant to section 57.085, Florida Statutes (2004), requiring that a lien be placed upon Spaziano's inmate trust account to provide payment for the court filing fee and partial setup fee. Spaziano filed a motion in the circuit court to vacate that order, citing the exemption provided in section 57.085(10), Florida Statutes, for collateral criminal proceedings. The circuit court denied the motion, concluding that an action challenging the Commission's determination of an inmate's PPRD is not a collateral criminal proceeding for the purposes of section 57.085(10), Florida Statutes, and is therefore not exempt from the payment and lien provisions of that statute.
Spaziano appealed the circuit court's denial of the writ and the order requiring imposition of a lien on his inmate trust account to the First District Court of Appeal. In its decision, the district court affirmed the denial of the writ, but reversed the circuit court's order imposing a lien on Spaziano's inmate trust account. The district court explained its reasoning for concluding that a challenge to an inmate's PPRD was exempt from the inmate lien requirements of section 57.085 in part as follows:
We do, however, agree that the lower court departed from the essential requirements of law by denying petitioner's motion for relief from the order imposing a lien on his prison trust account *717 for the purpose of covering his appellate costs. In our judgment, a petition for writ of mandamus challenging a PPRD is a "collateral criminal proceeding." In Schmidt v. Crusoe, 878 So.2d 361, 367 (Fla.2003), the supreme court concluded "that a gain time challenge is analogous to a collateral challenge to a sentence in a criminal proceeding because the end result is the samethe inmate's time in prison is directly affected." Under such circumstances, the general indigency statute, section 57.01, Florida Statutes, applies.
....
The test adopted in Schmidt for treatment of an action as a collateral criminal proceeding for the purpose of the exemption from the prisoner indigency lien provision is whether the action affects the length of time an inmate will actually serve in prison. In our judgment, a mandamus petition seeking the correct calculation of a prisoner's PPRD is analogous to an action raising a gain time issue, because a PPRD imposed outside the maximum matrix time range for a specific offense clearly affects the length of time an inmate will spend in prison. Accordingly, we conclude the trial court departed from the essential requirements of law in denying petitioner's motion to vacate the lien on his inmate trust account.
46 So.3d at 582.
The question of whether section 57.085(10) exempts judicial challenges to the Commission's determination of an inmate's PPRD is a pure question of law; thus, our review is de novo. See D'Angelo v. Fitzmaurice, 863 So.2d 311, 314 (Fla. 2003) ("The standard of review for the pure questions of law before us is de novo."); Borden v. East-European Ins. Co., 921 So.2d 587, 591 (Fla.2006) (holding that a question of statutory interpretation is subject to de novo review). Where, as here, the question of law turns on the provisions of a statute, we must first and foremost endeavor to give effect to the legislative intent underlying that statute, which is the polestar that guides us. See, e.g., Knowles v. Beverly Enterprises-Florida, Inc., 898 So.2d 1, 5 (Fla.2004). In determining the Legislature's intent in enacting the statute, we look first to the text of the provision. See id. Thus, we turn next to an examination of the pertinent provisions of section 57.085. We also review other pertinent provisions of the Florida statutes, as well as our judicial precedent, all of which inform our analysis of the question presented in this case.

THE APPLICABLE LAW

A. Section 57.085, Florida Statutes, the Prisoner Indigency Statute
Prison inmates are not completely exempt from the payment of court costs and fees for certain legal actions in Florida. The general indigency statute, section 57.081, Florida Statutes (2009), provides a general waiver of prepayment of court costs and fees for persons who are determined to be indigent, but expressly does not apply to prisoners who file or intervene in civil proceedings. See § 57.081(1), Fla. Stat. (2009). Under section 57.085, known as the "Prisoner Indigency Statute," prepayment of court costs is deferred rather than waived, meaning that an indigent prisoner, if he or she is able, must make an initial partial payment of court costs and fees. A lien is then placed on that inmate's trust account for payment of the remaining costs and fees in monthly installments. See § 57.085(4)-(5), Fla. Stat. Importantly, the act expressly exempts criminal proceedings and collateral criminal proceedings from application of the payment and lien provisions of the *718 statute. See § 57.085(10), Fla. Stat. (2009).[4]
Section 57.085 was enacted in 1996 in an effort to discourage frivolous civil suits by prison inmates. See ch. 96-106, § 2, at 93-95, Laws of Florida. The "Whereas" clauses in the preamble to chapter 96-106 focus on "frivolous" inmate lawsuits and the fact that they "congest civil court dockets and delay the administration of justice for all litigants." The preamble provides in pertinent part:
WHEREAS, frivolous inmate lawsuits congest civil court dockets and delay the administration of justice for all litigants, and
WHEREAS, each year self-represented indigent inmates in Florida's jails and prisons file an ever-increasing number of frivolous lawsuits at public expense against public officers and employees, and
WHEREAS, state and local governments spend millions of dollars each year processing, serving, and defending frivolous lawsuits filed by self-represented indigent inmates, and
WHEREAS, the overwhelming majority of civil lawsuits filed by self-represented indigent inmates are frivolous and malicious actions intended to embarrass or harass public officers and employees, and
WHEREAS, under current law frivolous inmate lawsuits are dismissable by the courts only after considerable expenditure of precious taxpayer and judicial resources....
Ch. 96-106, preamble, Laws of Fla.
To effectuate the intent set forth in the preamble, section 57.085 calls upon the circuit court to screen inmate court filings to determine whether the prisoner's action is "frivolous" or falls within the category of civil litigation that the Legislature seeks to discourage by implementation of this law. See § 57.085(9), Fla. Stat. (2009). Those inmate actions found by the circuit court to be frivolous, malicious, or intended to harass may be dismissed. See § 57.085(6), Fla. Stat. (2009).[5] As we explained in McNeil v. Cox, 997 So.2d 343 (Fla.2008), the Florida prisoner indigency statute "was enacted to discourage filing of frivolous civil lawsuits involving challenges to prison conditions, such as [complaints about] `peanut butter,' `pancake[s],' `dinner roll[s],' `salad,' `fine china,' `satellite television,' and `shoe brand[s].'" Id. at 346 (footnotes omitted).
Actions not found to be frivolous or malicious or otherwise subject to dismissal under the act will proceed, but with the requirement that the prisoner prepay filing fees and related costs or be subject to a lien on his or her inmate trust account. *719 However, the Legislature has expressly determined in section 57.085(10) that any criminal proceeding or collateral criminal proceeding brought by a prisoner is exempt from section 57.085. Thus, when a prisoner files or intervenes in any judicial proceeding, the question arises as to whether the action is one intended to be exempt from the payment and lien requirements of section 57.085. It is instructive to our analysis to review the manner in which section 57.085 has been applied in our judicial precedent.

B. Judicial Precedent
In Schmidt v. Crusoe, 878 So.2d 361 (Fla.2003), we considered whether an inmate's petition for writ of mandamus challenging forfeiture of gain time is essentially a collateral criminal proceeding or whether it is a civil proceeding subject to the payment and lien provisions of the Prisoner Indigency Statute. We concluded that a gain time challenge was analogous to a collateral criminal proceeding for the purposes of section 57.085(10) and was therefore exempt from the fee and lien provisions of section 57.085. In so holding, we recognized that section 57.085 was enacted as part of a Legislative effort intended to reduce unnecessary or frivolous prisoner filings. Id. at 363; see also Geffken v. Strickler, 778 So.2d 975, 977 (Fla.2001) ("The legislative history of these amendments makes clear that the intent of all the amendments was to reduce the filing of frivolous lawsuits and reduce the amount of funds unnecessarily expended on such lawsuits in the courts."). Because gain time challenges, if successful, affect the amount of time a prisoner must spend in prison, we concluded in Schmidt that such challenges were analogous to collateral criminal proceedings.
In arriving at this holding in Schmidt, we also considered the provisions of the federal Prison Litigation Reform Act (PLRA) enacted by Congress in 1996. See Pub.L. No. 104-134, §§ 801-10, 110 Stat. XXXX-XX-XXXX-XX (1996) (codified in part at 28 U.S.C. § 1915 (2006)). We noted that the PLRA was also intended to discourage filing of frivolous inmate actions, but "the federal courts have concluded that claims contesting the computation of criminal sentences should continue to be treated as traditional collateral criminal proceedings under habeas corpus, since they were not the type of civil lawsuits Congress meant to discourage or restrict." Schmidt, 878 So.2d at 365. The federal courts have held that the PLRA was promulgated by Congress "to curtail prisoner tort, civil rights and conditions litigation" and not the filing of habeas type suits. Anderson v. Singletary, 111 F.3d 801, 805 (11th Cir.1997).[6] We further explained in Schmidt that "[t]he federal decisions have found no indication in the text of the PLRA or its legislative history to indicate that Congress expected its filing fee payment requirements to apply to traditional hybrid civil-criminal, habeas-type actions in which inmates assert an entitlement to *720 gain time and an accelerated release from prison but were not contesting their conditions of confinement." Schmidt, 878 So.2d at 364. We similarly concluded that Florida's Prisoner Indigency Statute, section 57.085, was intended only "to discourage the filing of frivolous inmate lawsuits, but not to prevent the filing of claims contesting the computation of criminal sentences." Id. at 366. In holding that prisoners' gain time challenges are collateral criminal proceedings for purposes of section 57.085(10), we explained:
Long ago, [the United States Supreme Court] made clear that "[a] prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." Weaver v. Graham, 450 U.S. 24, 32[, 101 S.Ct. 960, 67 L.Ed.2d 17] (1981).... It is clear that the Supreme Court has refused to be bound by the variations in terminology used in the various challenges to the computation of an inmate's sentence. Instead, it has looked to the effect the challenged action had on the amount of time an inmate has to actually spend in prison. We think we should do the same; thus, we conclude that a gain time challenge is analogous to a collateral challenge to a sentence in a criminal proceeding because the end result is the samethe inmate's time in prison is directly affected.
In the instant case, Schmidt's loss of gain time effectively lengthened his sentence, since by the Department of Corrections' action he now has to serve that additional time in prison. Therefore, we agree, in accord with the authorities discussed above, that his gain time challenge should be considered a "collateral criminal proceeding," and the Prisoner Indigency Statute should not apply. To hold otherwise would result in an unlawful "`chilling' of a criminal defendant's right to appeal or otherwise challenge the propriety or constitutionality of the conviction or sentence," Geffken v. Strickler, 778 So.2d 975, 977 n. 5 (Fla. 2001), and raise a serious issue as to criminal defendants' constitutional rights of access to the courts to challenge their sentences.
Schmidt, 878 So.2d at 366-67 (footnote omitted).
The next relevant decision in this line of cases is Cox v. Crosby, 27 So.3d 45 (Fla. 1st DCA 2006). In Cox, the First District had for consideration the question of whether Cox's petition for writ of mandamus challenging the constitutionality of a 1993 amendment to section 944.275, Florida Statutes, was exempt from the fee and lien requirements under section 57.085(10). Section 944.275, as amended, precluded Cox from receiving basic gain time. The trial court in Cox held that the action was not exempt from the payment and lien provisions of section 57.085. See id. at 45. Cox sought review in the district court, where the State argued that the holding in Schmidt should be limited to actual gain time forfeitures and not apply to an action challenging a statute. The First District disagreed and concluded that Cox's action was one that is exempt from payment and lien requirements because, if successful, it would directly affect the time that Cox would spend in prison. Cox, 27 So.3d at 46. The district court then certified the following question to this Court in Cox v. Crosby:
Does the holding in Schmidt v. Crusoe, 878 So.2d 361 (Fla.2003), extend to all actions, regardless of their nature, in which, if successful, the complaining party's claim would directly affect his or her time in prison, so to preclude imposition *721 of a lien on the inmate's trust account to recover applicable filing fees?
Id.
We granted review and rephrased the certified question in McNeil v. Cox, 997 So.2d 343, 346 (Fla.2008). After specifically limiting the question to all "gain time" actions, we answered it in the affirmative. See id. at 344. In so holding, we determined that "[t]he prisoner indigency statute was intended to supplant the general indigency statute for most purposes where prisoners' civil filings are concerned." Id. at 345. We also concluded that "the prisoner indigency statute was intended to `discourage the filing of frivolous civil lawsuits' with respect to prison conditions." Id. at 348 (quoting Schmidt, 878 So.2d at 366). Based on the text and intent of section 57.085 and on our decision in Schmidt, we held in Cox that all gain time actions, including actions challenging a gain time statute, are "collateral criminal proceedings" for the purposes of section 57.085(10), and thus exempt from the payment and lien requirements of the act. Cox, 997 So.2d at 348.
Because the question we answered in Cox was limited to gain time challenges, that decision is not dispositive of the question presented in this case, which pertains to actions challenging the Commission's determination of an inmate's presumptive parole release date. We have never addressed the question now before us concerning whether an action challenging the Commission's determination of an inmate's PPRD is a collateral criminal proceeding intended to be exempt from the lien provisions of section 57.085. Thus, we must examine the statutory framework in which the Commission calculates a prisoner's presumptive parole release date and attempt to determine the effect that calculation has on the setting of an inmate's actual parole release date.

C. The Statutory and Administrative Framework for Determination of PPRD and its Role in a Final Parole Decision
The Commission contends that PPRD decisions are so different from gain time challenges that they cannot fall within the exemption set forth in section 57.085(10), and that the rationale of Cox is not applicable to the determination of an inmate's PPRD because that calculation does not alter the stated term of the inmate's original sentence. The Commission further contends that although gain time directly affects the length of an inmate's sentence and is essentially a sentence-related matter, parole decisions are discretionary determinations that are separate and apart from the sentence and from calculation of the length of the sentence. We have considered each of these contentions and find that none of them supports the Commission's contention that section 57.085(10) is inapplicable to actions challenging an inmate's PPRD calculation.
Chapter 947 sets forth the legislative scheme governing parole in this state. We recognize that section 947.002, Florida Statutes (2009), titled "Intent," confirms that parole is not a matter of right, but is one of legislative grace. § 947.002(5), Fla. Stat. (2009). Even so, an inmate who is entitled to consideration for parole is entitled under chapter 947 to an initial determination by the Commission of a PPRD based on objective guidelines and relevant aggravating and mitigating circumstances. Section 947.172, Florida Statutes (2009), "Establishment of presumptive parole release date," provides that a hearing examiner shall conduct an initial interview with the inmate in preparation for recommending a PPRD to a panel of no fewer than two parole commissioners appointed by the Commission chair. § 947.172(2), Fla. Stat. *722 (2009). Under section 947.172(2), Florida Statutes, the hearing examiner's recommendation of a PPRD is to be based on objective parole guidelines and "any other competent evidence relevant to aggravating and mitigating circumstances." § 947.172(2), Fla. Stat.; see also § 947.005(5), Fla. Stat. (2009) (defining "Presumptive Parole Release Date" as the tentative parole release date "as determined by objective parole guidelines").[7] Section 947.165, Florida Statutes (2009), directs the Commission to develop and implement the objective parole guidelines, "which shall be the criteria upon which parole decisions are made." § 947.165(10), Fla. Stat. (2009). Under this statutory scheme, where aggravating circumstances are found to exist, additional months are added to the PPRD calculation.
We also recognized in Florida Parole & Probation Commission v. Paige, 462 So.2d 817 (Fla.1985), that although "[p]lacement of the inmate on parole on the date of his presumptive parole release date ... is not automatic," the PPRD "becomes binding on the Commission in the sense that, once established, it is not to be changed except for reasons of institutional conduct, acquisition of new information ... or for good cause in exceptional circumstances." Id. at 819. This is also reflected in section 947.172(3), which provides in pertinent part:

*723 (3) A presumptive parole release date shall become binding on the commission when agreement [by the commissioners] on the presumptive parole release date is reached. Should the presumptive parole release date fall outside the matrix time ranges as determined by the objective parole guidelines, the reasons for this decision shall be stated in writing with individual particularities.
§ 947.172(3), Fla. Stat. (2009) (emphasis added). The significance of a properly calculated PPRD is apparent when it is viewed within the statutory scheme for progressing to the next critical step in the parole process, determination of the inmate's "effective parole release date." Section 947.005(5), Florida Statutes (2009), defines "[e]ffective parole release date" as "the actual parole release date as determined by the presumptive parole release date, satisfactory institutional conduct, and an acceptable parole plan." § 947.005(5), Fla. Stat. (emphasis added). Section 947.1745, Florida Statutes (2009), directs the Commission to establish the inmate's effective parole release date and provides in pertinent part that "[i]f the inmate's institutional conduct has been satisfactory, the presumptive parole release date shall become the effective parole release date."[8] Thus, only after the Commission determines the PPRD can the Commission progress to the point of setting the inmate's effective parole release date (EPRD).
While it can be seen that the PPRD is not the final determination of the inmate's parole release date, we cannot ignore the fact that without this first critical step, none of the other statutory steps may be taken on the path to reaching an effective parole release date for the inmate. Unless corrected, errors in determination of the PPRD, such as consideration of improper aggravating circumstances, will necessarily cause the effective parole release date and, if parole is ultimately granted, the actual release date to be delayed.
As we noted in Schmidt, gain time credits "are `one determinant of a petitioner's prison term ... and [his] effective sentence is altered once this determinant is changed.'" Schmidt, 878 So.2d at 367 (quoting Lynce v. Mathis, 519 U.S. 433, 445, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997)). Similarly, alterations to the calculation of an inmate's PPRD based upon elimination of an erroneous aggravating circumstance in turn alters a prisoner's presumptive parole release date and, thus, alters the effective parole release date, once that determinant is changed.
We therefore conclude that although the PPRD does not determine an inmate's actual parole release date, and while we recognize that parole is not a matter of right, an action challenging the correctness of the PPRD determination can directly affect the length of time that an inmate will spend in prison. Accordingly, challenges to the PPRD do not fall into the category of frivolous or malicious civil actions which the Legislature sought to discourage by the enactment of section 57.085, but are instead analogous to collateral criminal proceedings intended by the Legislature to be exempt from the fee and lien provisions of the act. Such actions fall within the exception expressly set forth by the Legislature in section 57.085(10) for "collateral criminal proceedings." Further, similar to the concern we voiced in Schmidt, to hold otherwise would effectively result in an unlawful "chilling" of a prisoner's right to seek review of the Commission's determination of his presumptive parole release *724 date. See Schmidt, 878 So.2d at 367 (citing Geffken, 778 So.2d at 977 n. 5). For these reasons, we answer the rephrased certified question in the affirmative.

THIS CASE
Spaziano filed his challenge to the Commission's determination of his presumptive parole release date by petition for writ of mandamus in the circuit court, which is the proper vehicle for challenging such decisions. His challenge was not determined to be frivolous or malicious by the circuit court or the district court, nor do we view it as such. Spaziano's challenge, if successful, would have directly affected his presumptive parole release date and, in turn, his effective parole release date. Because these dates are critical to the calculation of an inmate's parole release date for those inmates who are ultimately granted parole, we conclude that Spaziano's challenge to the PPRD is a collateral criminal proceeding for the purposes of section 57.085(10). The Legislature has specifically exempted collateral criminal proceedings from the fee and lien provisions of section 57.085, and we are not at liberty to ignore this express legislative directive. For these reasons, we approve the decision of the First District Court of Appeal vacating the order of the circuit court, which imposed a lien upon Spaziano's trust account.

CONCLUSION
Based on the foregoing, we answer the rephrased certified question in the affirmative and approve the decision of the district court. We hold that inmate challenges, regardless of their nature, to the Florida Parole Commission's determination of an inmate's presumptive parole release date constitute collateral criminal proceedings for the purposes of section 57.085(10). Accordingly, when such an action is brought, section 57.085(10) precludes imposition of a lien on the inmate's trust account to recover applicable filing fees.
It is so ordered.
PARIENTE, LEWIS, QUINCE, POLSTON, and PERRY, JJ., concur.
CANADY, C.J., dissents with an opinion.
CANADY, C.J., dissenting.
Because a proceeding to challenge the Florida Parole Commission's determination of a presumptive parole release date (PPRD) is not a collateral criminal proceeding, I dissent.
The requirements of the Prisoner Indigency Statute apply generally to any "prisoner who is intervening in or initiating a judicial proceeding." § 57.085(2), Fla. Stat. (2004). The only exceptions from the operation of the statutory requirements are for "a criminal proceeding or a collateral criminal proceeding." § 57.085(10), Fla. Stat. (2004). As we have previously recognized, "collateral criminal proceedings" are proceedings "which contest a criminal conviction or sentence." Geffken v. Strickler, 778 So.2d 975, 976 (Fla.2001). That is, they are proceedings which involve a collateral attack on the conviction or sentence entered in a criminal case.
A proceeding challenging a parole commission PPRD determination is not a "collateral criminal proceeding." A challenge to a PPRD does not involve a collateral attack on a criminal conviction or sentence. An attack on a PPRD determination has nothing to do with the validity of the conviction or sentence. "A parole hearing is an administrative proceeding" and "it is not part of a criminal prosecution." State v. Scarlet, 800 So.2d 220, 221 (Fla.2001) (quoting Scarlet v. State, 766 So.2d 1110, 1110-11 (Fla. 3d DCA 2000)).
*725 The majority here concludes, however, that because "challenges to the PPRD" are "analogous to collateral criminal proceedings" they "fall within the exception expressly set forth by the Legislature in section 57.085(10) for `collateral criminal proceedings.'" 48 So.3d at 723 (emphasis added). In reaching this conclusion, the majority relies on our decision in Schmidt v. Crusoe, 878 So.2d 361, 367 (Fla.2003), where we held that "a gain time challenge is analogous to a collateral challenge to a sentence in a criminal proceeding because... the inmate's time in prison is directly affected." (Emphasis added.)
But there is no justification for applying the unambiguous exception for "a collateral criminal proceeding" to a proceeding which is not "a collateral criminal proceeding" but which this Court determines to be "analogous" to such proceedings. Such an "extension by analogy" of a statutory provision "involves creative judicial lawmaking to produce consequences beyond what could reasonably be said to have been intended or communicated" by the statute. 2B Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 55:1 (7th ed.2008). This violates "the overarching principle that judges lack the power `to construe an unambiguous statute in a way which would extend, modify, or limit its express terms or its reasonable and obvious implications.'" Horowitz v. Plantation Gen. Hosp. Ltd. P'ship, 959 So.2d 176, 182 (Fla.2007) (emphasis removed) (quoting Holly v. Auld, 450 So.2d 217, 219 (Fla.1984)). Although "extension by analogy" is an important part of common law adjudication, it cannot properly be employed as a method of interpreting an unambiguous statutory text. The use of "extension by analogy" in such a context is inconsistent with the respect due to the limits set by the Legislature in the statutory text.
Moreover, legal challenges to PPRD determinations are not analogous to collateral criminal proceedings in the same way that the gain time proceedings at issue in Schmidt were analogous to collateral criminal proceedings. Contrary to the majority's reliance on Schmidt, an attack on a PPRD determination does not challenge a decision by which "the inmate's time in prison is directly affected." Schmidt, 878 So.2d at 367. Under the statutory scheme governing parole, an inmate does not have an enforceable right to release based on the PPRD. See Fla. Parole & Prob. Comm'n v. Paige, 462 So.2d 817, 820 (Fla. 1985) ("`[T]he use of the terms "guidelines" and "presumptive parole release date" clearly conveys the message that the final parole decision will depend upon the commission's finding that the prisoner meets the conditions provided in section 947.18.' [May v. Fla. Parole & Prob. Comm'n, 435 So.2d 834, 837 (Fla. 1983)].... On the record before us, we find no abuse of discretion by the Commission in declining at this time to set an effective parole release date."); see also § 947.002(5), Fla. Stat. (2004) ("It is the intent of the Legislature that the decision to parole an inmate from the incarceration portion of the inmate's sentence is an act of grace of the state and shall not be considered a right.").
Here the majority thus pushes Schmidt's expansion of the statutory exemption for collateral criminal proceedings even beyond the bounds contemplated by Schmidt. The majority's extension of Schmidt's reasoning to the context at issue here illustrates how far the trajectory of Schmidt's reasoning veers away from the governing statutory text. I would return to the text of the statute adopted by the Legislature. Failing to do so results in "an abrogation of legislative power." Holly, 450 So.2d at 219 (quoting Am. Bankers *726 Life Assurance Co. of Fla. v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968)).
The rewriting of the unambiguous statutory exception in section 57.085(10) is not justified by the majority's assertion that applying the requirements of the Prisoner Indigency Statute to Spaziano would "effectively result in an unlawful `chilling' of a prisoner's right to seek review of the Commission's determination of his presumptive parole release date." 48 So.3d at 723-24. If application of the plain terms of the statute results in a constitutional violation, the constitutionality of the statute should be squarely addressed. Vague assertions of constitutional problemsunaccompanied by any analysisdo not provide a basis for deciding this or any other case.
I therefore would quash the decision of the First District Court of Appeal and answer the rephrased certified question in the negative.
NOTES
[1] The actual question certified by the district court was the following:

Does the holding in Schmidt v. Crusoe, 878 So.2d 361 (Fla.2003), extend to all actions, regardless of their nature, in which, if successful, the complaining party's claim would directly affect his or her time in prison, so to preclude imposition of a lien on the inmate's trust account to recover applicable filing fees?
See Spaziano, 46 So.3d at 582 (certifying by reference the same question certified in Cox v. Crosby, 27 So.3d 45, 46 (Fla. 1st DCA 2006), which was restated by this Court to limit the question to gain time challenges and answered in the affirmative in McNeil v. Cox, 997 So.2d 343, 344 (Fla.2008)).
[2] The determination of a PPRD for parole-eligible inmates is required under chapter 947, Florida Statutes. The procedure for that initial determination and for subsequent reviews of the date by the Commission is set forth in sections 947.172-174, Florida Statutes (2009). The correctness of the calculation of Spaziano's PPRD is not an issue before this Court. The certified question in this case focuses only on whether Spaziano's court challenge is subject to imposition of a lien on his inmate trust account to pay filing and other court fees. We also note that the Commission asserted below that Spaziano's petition was untimely, but the district court rejected that argument. Timeliness of the petition is not an issue in this Court.
[3] In his petition, Spaziano alleged that the Commission erroneously relied upon five unsupported aggravating factors in calculating a presumptive parole release date that was in excess of the maximum matrix time range. See Spaziano, 46 So.3d at 580. He contended in his petition that if the erroneous factors were eliminated, the correct matrix time range under the applicable parole laws would be 228 months rather than the 1020 months determined by the Commission, and that he had already served 354 months.
[4] The provisions of section 57.085(10), Florida Statutes (2009), are identical to section 57.085(10), Florida Statutes (2004), in effect when Spaziano filed his petition.
[5] Section 57.085 also provides that the court may dismiss all or part of an indigent prisoner's claims if it finds that the action fails to state a cause of action, seeks monetary relief from a defendant immune from suit, or seeks relief for mental or emotional injury where there is no allegation of physical injury. See § 57.085(6)(a)-(c), Fla. Stat. (2009). The statute further provides that in any judicial proceeding in which a certificate of indigence has been issued to a prisoner, the court may dismiss the action in whole or in part on a finding that the prisoner's claim of indigence is false or if the action is frivolous or malicious. See § 57.085(8)(a), (d), Fla. Stat. (2009). An action is frivolous under the statute if it has no arguable basis in law or fact, is similar to a previous claim involving the same parties or arises from the same operative facts as a previous claim, has little likelihood of success on its merits, or is based on allegations that are fanciful or not credible. See § 57.085(9)(a)-(e), Fla. Stat. (2009).
[6] As we explained in Schmidt, the federal courts have not discussed the application of the federal Prisoner Litigation Reform Act, 28 U.S.C. § 1915, to mandamus petitions because all gain time petitions in the federal courts must be filed as habeas petitions. 878 So.2d at 364 n. 4. In Florida, mandamus petitions are a proper vehicle for bringing a gain time challenge that will not result in immediate release. See Bush v. State, 945 So.2d 1207, 1210 (Fla.2006), ("[I]f the prisoner alleges entitlement to immediate release, a petition for writ of habeas corpus is the proper remedy; whereas if the prisoner does not allege entitlement to immediate release, a petition for writ of mandamus is the proper remedy." (footnote omitted)). Mandamus is also the proper remedy in Florida for review of an order of the Commission determining a presumptive parole release date. See Griffith v. Florida Parole & Probation Comm'n, 485 So.2d 818, 820 (Fla. 1986).
[7] Rule 23-21.009, Florida Administrative Code, establishes matrix time ranges for parole determinations. Matrix time ranges are reported in months. See Fla. Admin. Code R. 23-21.009. "Matrix Time Range" is defined in Florida Parole Commission rule 23-21.001(26), Florida Administrative Code, as "the appropriate range of months found where the offender's salient factor score total intersects with the offender's severity of offense behavior." Rule 23-21.010, Florida Administrative Code, provides that the Commission may render a decision outside the matrix time range based on "competent and persuasive evidence relevant to aggravating or mitigating circumstances" under certain specified conditions. Fla. Admin. Code R. 23-21.010(1). Rule 23-21.010(5) sets forth a list of possible aggravating circumstances as follows:

(a) AggravationDecisions above the matrix time range:
1. Reasons related to aggravation of the severity of offense behavior can include:
a. The offense involved the use of a firearm or dangerous weapon;
b. The offense resulted in great bodily injury or pecuniary loss;
c. The offense involved multiple victims or knowingly created a great risk of bodily injury or death to many people;
d. The offense involved exceptionally brutal or heinous behavior indicative of wanton cruelty;
e. The offense was part of a large-scale organized scheme of criminal conspiracy;
f. The offense was committed against a victim known to be particularly vulnerable, such as elderly persons, physically or mentally handicapped persons, children;
g. The offense was committed in an unusually sophisticated manner;
h. Any additional offenses;
i. The inmate committed an offense while holding public office and the offense was related to his conduct in office;
j. The inmate committed an offense using his professional reputation or position in the community to effectuate the offense or to afford him an easier means of perpetrating it; and
k. The inmate committed an offense for the purpose of avoiding or preventing a lawful arrest or effecting an escape.
2. Reasons related to likelihood of favorable parole outcome, negative indicants of parole prognosis can include:
a. The offense was committed while on bond, after bond was entreated or on release on recognizance;
b. The inmate has a history of alcohol or narcotics abuse;
c. The inmate has a history of assaultive or violent behavior; and
d. The inmate has failed or refused to make restitution when he was able to do so.
[8] Rule 23-21.015, Florida Administrative Code, sets forth the specific procedures to be followed in determining the effective parole release date.