# Third District Court of Appeal

## State of Florida

Opinion filed July 12, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-289
Lower Tribunal No. 77-471C
_____

**Adolphus Rooks,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Richard L. Hersch, Judge.

Carlos J. Martinez, Public Defender, and Jonathan Greenberg, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Nikole Hiciano, Assistant Attorney General, for appellee.

Before SUAREZ, EMAS and LOGUE, JJ.

EMAS, J.

Adolphus Rooks appeals from a denial of his motion to correct sentence. Rooks contends that his 1972 sentence of life <u>with</u> the possibility of parole for sexual battery, committed as a juvenile, violated the Eighth Amendment as announced in <u>Graham v. Florida</u>, 560 U.S. 48 (2010) and <u>Miller v. Alabama</u>, 567 U.S. 460 (2012), 132 S.Ct. 2455, and as applied in <u>Atwell v. State</u>, 197 So. 3d 1040 (Fla. 2016) and <u>Henry v. State</u>, 175 So. 3d 675 (Fla. 2015).

For the reasons that follow, we affirm, and hold that, because Rooks was sentenced in 1972 to life with parole eligibility, was paroled from prison in 1980 after serving eight and one-half years, and thereafter violated his parole by committing a new crime as an adult, leading to his re-incarceration, neither <u>Graham</u>/<u>Miller</u> nor <u>Henry</u>/<u>Atwell</u> is implicated, the sentence is not illegal, and Rooks is not entitled to a resentencing under Florida's newly-enacted juvenile sentencing scheme.

**<u>FACTS</u>**

Adolphus Rooks was born on November 17, 1955. In 1971, he was arrested and charged with sexual battery in violation of section 794.01, Florida Statutes (1971).[1] On May 1, 1972, Rooks entered a plea of guilty and was sentenced to life imprisonment with the possibility of parole.

---

[1] In 1971, sexual battery under section 794.01 was designated a capital felony, punishable by death or by a sentence of life imprisonment with the possibility of parole.

On November 4, 1980, eight and one-half years following imposition of his life with parole sentence, Rooks was released from prison and placed on parole supervision. At the time of his release on parole, Rooks was twenty-four years old.

On June 28, 1986 (at the age of thirty), Rooks was taken into custody on a parole violation and, on January 8, 1987, Rooks was returned to prison as a parole violator.

On October 10, 2006 (at the age of fifty), Rooks was again released from prison and placed on parole supervision. In 2007, Rooks was initially held on a parole violation, but was not returned to prison at that time. He was instead restored to parole on January 9, 2008 (at the age of fifty-two).

On August 29, 2014, (at the age of fifty-eight) the Probation and Parole Commission issued a Warrant for Retaking Paroled Prisoner alleging Rooks violated his parole by committing the first-degree felony of trafficking in heroin, in the amount of fourteen grams or more, but less than twenty-eight grams. See § 893.135(1)(c)1., Fla. Stat. (2014).[2] On August 26, 2015, Rooks' parole was revoked and he was returned to prison. He thereafter filed his motion to correct illegal sentence, which the trial court denied and which we review de novo. Henry, 175 So. 3d at 676-77.

---

[2] Rooks committed the trafficking offense in 2014 in Seminole County, (Circuit Court, Eighteenth Judicial Circuit, case number 14-2685), was convicted of the trafficking charge and sentenced to a separate mandatory minimum term of fifteen years' imprisonment.

3

## ISSUE AND ANALYSIS

Rooks asserts that, pursuant to the United States Supreme Court's decisions in <u>Graham</u> and <u>Miller</u> and the Florida Supreme Court's decisions in <u>Henry</u> and <u>Atwell</u>, he is entitled to resentencing pursuant to sections 775.082, 921.1401 and 921.1402, Florida Statutes (2016).

A brief history of the developing case law in this area is necessary. In <u>Roper v. Simmons</u>, 543 U.S. 551 (2005), the United States Supreme Court held that the Eighth Amendment prohibited imposition of the death penalty for any crime committed by a juvenile. Given this ruling in <u>Roper</u>, a life without parole sentence became the most severe punishment that could be imposed upon any defendant who committed a crime as a juvenile.

In <u>Graham</u>, 560 U.S. at 53, the defendant was sixteen years old when he committed an armed burglary at a restaurant in Florida. Graham pleaded guilty to that charge and the trial court withheld adjudication and placed Graham on probation, with a special condition of twelve months in a county detention facility. <u>Id.</u> at 54. Within six months of his release, and while still a juvenile, Graham violated his probation by committing a new crime (armed burglary with a firearm). <u>Id.</u> The trial court found Graham in violation of his probation, revoked his probation and sentenced him on his original offense to the maximum sentence of life imprisonment without the possibility of parole. <u>Id.</u> at 57.

4

Graham challenged the constitutionality of a life without parole sentence imposed on a juvenile for a nonhomicide offense. The United States Supreme Court agreed that such a sentence is unconstitutional, holding that "for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole." Graham, 560 U.S. at 74. The Supreme Court recognized that, given its earlier decision in Roper, which invalidated capital punishment for all juvenile offenders, a sentence of life without the possibility of parole is akin to the death penalty, serving as the most severe punishment that can lawfully be imposed on a juvenile offender. See Miller, 567 U.S. at ___, 132 S.Ct. at 2463 (noting "Graham further likened life without parole for juveniles to the death penalty itself. . . ."). The Court also recognized that a life without parole sentence imposed upon a juvenile is proportionately more severe than one imposed upon an adult:

> Life without parole is an especially harsh punishment for a juvenile. Under this sentence a juvenile offender will on average serve more years and a greater percentage of his life in prison than an adult offender. A 16-year-old and a 75-year-old each sentence to life without parole receive the same punishment in name only.

Graham, 560 U.S. at 70-71.

The Court cautioned that its holding, prohibiting a life without parole sentence for a juvenile offender who does not commit murder, does not mean that a state is

5

> required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life.
>
> ***
>
> The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society.

Id. at 75.

In Miller, 567 U.S. at \_\_\_, 136 S.Ct. at 2469, the juvenile offender was convicted of murder and, under Alabama law, the trial court was required to sentence him to life without parole, the harshest penalty which can be imposed for a crime committed by a juvenile. Given the mandatory nature of this sentence, the trial judge was prohibited from making an individualized sentencing determination, or to consider any mitigating circumstances, including "an offender's youth and attendant characteristics." Id. at 2471. Miller challenged the constitutionality of his sentence, and the United States Supreme Court held a mandatory life without parole sentence for juvenile homicide offenders violated the Eighth Amendment:

6

> Graham, Roper, and our individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing **the harshest possible penalty for juveniles**. By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory-sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment.

Id. at 2475 (emphasis added).

The Roper-Graham-Miller line of decisions was decided against a backdrop not present in this case: that the defendant was subjected to the "harshest possible penalty for juveniles": life without the possibility of parole. By likening a juvenile life without parole sentence to an adult death penalty sentence, the Eighth Amendment's proportionality concerns are implicated, and the long line of United States Supreme Court decisions which require individualized sentencing considerations (including consideration of mitigating circumstances) before imposing the "harshest possible penalty," become applicable.

Additionally, and particularly with juvenile offenders facing life imprisonment without the possibility of parole, a trial judge is required to consider the age of the offender and age-related characteristics, including a juvenile's diminished culpability and heightened capacity for change. Id. at 2469. As the Miller Court acknowledged: "That is especially so because of the great difficulty we noted in Roper and Graham of distinguishing at this early age between 'the

7

juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption."' Id. (quoting Roper, 543 U.S. at 573).

Miller and Graham thus established the threshold which must be met before an Eighth Amendment challenge can be raised in this context: the juvenile offender must be sentenced to life without the possibility of parole, a sentence akin to a "juvenile death penalty." In Miller, for example (involving a mandatory life without parole sentence for a homicide), it is the very nondiscretionary, mandatory nature of this severest of sentences which "precludes consideration of [a defendant's] chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences." Miller, 132 S.Ct. at 2468. A statutorily-mandated life without parole sentence also "disregards the possibility of rehabilitation even when the circumstances most suggest it." Id.

As the Supreme Court characterized it in Montgomery v. Louisiana, __ U.S. __, 136 S.Ct. 718, 733 (2016): "Miller requires that before sentencing a juvenile to life without parole, the sentencing judge take into account "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." (Emphasis added.) Rooks contends that the sentencing judge in the instant case did not (and could not)[3] take these considerations into

account. However, these considerations are constitutionally required only "before sentencing a juvenile to life without parole." Id.

As applied to the instant case, it is clear that Rooks cannot meet this threshold established by Miller or Graham, because he was not sentenced to life *without* parole, but rather was sentenced to life *with* parole. This would appear to mark the end of the discussion. However, further analysis is required to address the Florida Supreme Court's recent decisions in Henry and Atwell, applying the holdings of Graham and Miller.

In Henry, 175 So. 3d at 677, the Florida Supreme Court applied the decisions of Graham and Miller to a case in which the juvenile offender was given an aggregate sentence of ninety years in prison. The court reasoned that "the Graham Court had no intention of limiting its new categorical rule to sentences denominated under the exclusive term of 'life in prison.'" Id. at 680. Instead, the court held:

> [T]he constitutional prohibition against cruel and unusual punishment under Graham is implicated when a juvenile nonhomicide offender's sentence does not afford any "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Graham requires a juvenile nonhomicide offender, such as Henry, to be afforded such an opportunity during his or her natural life. Because Henry's aggregate sentence, which totals ninety years and requires him to be imprisoned until he is at least nearly ninety five years old,

---

[3] In 1971, sexual battery was punishable by a mandatory sentence of either death or life imprisonment (with parole eligibility). See § 794.01, Fla. Stat. (1971).

does not afford him this opportunity, that sentence is unconstitutional under Graham.

Id. at 679-80 (quoting Graham, 560 U.S. at 75) (emphasis added).

In Atwell, 197 So. 3d at 1050, the Florida Supreme Court addressed whether the holdings of Miller and Graham apply to a juvenile nonhomicide offender whose life *with* parole sentence was effectively a life *without* parole sentence. In Atwell, the sixteen-year-old defendant was convicted of first-degree murder and sentenced to a mandatory term of life imprisonment with the possibility of parole after twenty-five years.

The court rejected the State's argument that Atwell's sentence was deemed constitutional by the mere fact that he was sentenced to life *with* parole:

> The State argues that Atwell's sentence is not unconstitutional because Miller unambiguously applies only to mandatorily imposed life without parole sentences. Because Atwell's sentence is not "without parole," the State asserts, it is not unconstitutional. To the State it is quite literally as simple as that.

> However, throughout this Court's post-Graham and Miller juvenile sentencing jurisprudence, we have consistently followed the spirit of Graham and Miller rather than a narrow, literal interpretation.

Id. at 1046.

The Florida Supreme Court reaffirmed its earlier holding in Henry that "when tried as an adult, the specific sentence that a juvenile nonhomicide offender receives for committing a given offense is not dispositive as to whether the

10

prohibition against cruel and unusual punishment is implicated." Id. (quoting

Henry, 175 So. 3d at 680).

In determining whether Atwell's life with parole sentence fell within the

scope of Miller and Graham, the court analyzed "how parole operates in Florida."

Id. at 1047. The court noted:

> Parole is the release of an inmate, prior to the expiration of the inmate's court-imposed sentence, with a period of supervision to be successfully completed by compliance with conditions and terms of the release agreement ordered by the Florida Commission on Offender Review. See William H. Burgess, *Fla. Sentencing* § 12:18 (2015–16 ed.). See also Florida Parole Comm'n v. Spaziano, 48 So.3d 714, 721–22 (Fla.2010). The judiciary has no input as to the operation of the parole system.
>
> An inmate who is eligible for parole has an initial interview with a hearing examiner. That examiner uses a salient factor score—a numerical score based on the offender's present and prior criminal behavior and related factors found to be predictive in regard to parole outcome—as well as the statutory severity of the inmate's offense to determine a corresponding range of months on a matrix that automatically indicates a range of presumptive parole release dates. See Spaziano, 48 So.3d at 722 n. 7. The presumptive parole release dates are the earliest dates an offender may be released from prison as determined by objective parole guidelines. Id.
>
> Under Florida statutory law, the objective parole criteria applied by the Commission must "give primary weight to the seriousness of the offender's present criminal offense and the offender's past criminal record." § 947.002, Fla. Stat. (2015). The hearing examiner may consider the aggravating and mitigating circumstances—none of which provide for the level of consideration of the diminished culpability of youth at the time of the offense as sentencing judges now consider post-Miller—that warrant a decision outside the given matrix time range, but must provide written justification for altering the presumptive parole release date. See § 947.172(3), Fla. Stat.

11

(2015); see also Spaziano, 48 So.3d at 723. The hearing examiner then makes a written recommendation to the Commission of a presumptive parole release date, which is reviewed by a panel of no fewer than two commissioners appointed by the chair. § 947.172(2), Fla. Stat. (2015). Subsequent parole interviews are conducted to determine whether information has been gathered that could affect the presumptive parole release date. § 947.174, Fla. Stat. (2015). When the inmate's presumptive parole release date nears and if the inmate's institutional conduct and parole release plan are satisfactory, the presumptive parole release date becomes the effective parole release date. § 947.1745, Fla. Stat. (2015). The Commission then engages in a final review process to determine if release is still appropriate and will authorize or modify the effective parole release date accordingly.

Id. at 1047-48.

The court determined that "[i]n most respects, a sentence of life with the possibility of parole for first-degree murder, based on the way Florida's parole process operates under the existing statutory scheme, actually resembles a mandatorily imposed life sentence without parole that is not 'proportionate to the offense and the offender.'" Id. at 1048 (quoting Horsley, 160 So. 3d at 406).

Applying Florida's current parole process to Atwell's sentence, the court concluded:

Even though Atwell was sentenced to life with the possibility of parole after twenty-five years, under Florida's existing parole system, the earliest date Atwell may be released from prison as determined by objective parole guidelines is the year 2130, or one hundred and forty years after Atwell's crime. Atwell, then, has no "hope for some years of life outside prison walls."

Id. at 1050 (quoting Montgomery, 136 S.Ct. at 737).

The court struck down Atwell's sentence, holding:

12

> The Supreme Court has emphasized—and this Court's own case law has followed—that the Eighth Amendment requires a trial court to "take into account the differences among defendants and crimes" before imposing a sentence that is, in effect, a sentence to a lifetime in prison. <u>Miller</u>, 132 S.Ct. at 2469 n. 8. <u>Atwell's sentence effectively resembles a mandatorily imposed life without parole sentence</u>, and he did not receive the type of individualized sentencing consideration <u>Miller</u> requires.

<u>Id.</u> at 1050 (emphasis added) (additional internal citations omitted).

Thus, by making the threshold finding that "Atwell's sentence <u>effectively resembles a mandatorily imposed life without parole sentence</u>" <u>id.</u> at 1050 (emphasis added), Atwell's sentence fell within the scope of <u>Graham</u>/<u>Miller</u> and was subject to challenge under the Eighth Amendment.

It is the threshold inquiry—i.e., Atwell's effective life without parole sentence, or Henry's aggregate ninety-year sentence which failed to afford a meaningful opportunity for early release during his natural life—that distinguishes the instant case from the analyses and holdings in <u>Graham</u>, <u>Miller</u>, <u>Henry</u> and <u>Atwell</u>.[4]

---

[4] Thus, in <u>Atwell</u>, the Florida Supreme Court determined that, because Atwell's life with parole sentence effectively resembled a life without parole sentence, Atwell met the threshold required by <u>Graham</u> to raise an Eighth Amendment challenge and seek resentencing. It is true that the <u>Atwell</u> court addressed the fact that, at his original sentencing, Atwell did not receive the requisite individualized sentencing consideration. Nevertheless, and as the holdings of <u>Graham</u> and <u>Miller</u> make clear, this factor becomes a basis for granting relief *only* if the initial <u>Graham</u>/<u>Miller</u> (and subsequent <u>Atwell</u>/<u>Henry</u>) threshold is met: that the juvenile nonhomicide offender was sentenced to life without parole (<u>Graham</u>); or a sentence that effectively resembles a life without parole sentence (<u>Atwell</u>); or a sentence that failed to afford the offender a meaningful opportunity for early release during

Unlike the existing parole system and guidelines under which Atwell was serving his sentence, the parole system and guidelines applicable to Rooks provided broader discretion in determining whether and when he would be released. Although the record below does not contain the precise parole guidelines in 1972 (the year of Rooks' conviction) or in 1980 (the year of his first release on parole),[5] this is evident from the fact that Rooks was released on parole supervision after serving only eight-and-a-half years of a life sentence[6], whereas Atwell's presumptive parole release date[7] was in the year 2130, at which point Atwell would be 156 years old.

Rooks' release on parole after eight-and-a-half years also distinguishes his sentence from the sentence imposed in Henry, as Rooks self-evidently received a

---

his natural life (Henry).

[5] We further note that Rooks had the burden of establishing an entitlement to relief on the face of the record. See Cox v. State, 42 Fla. L. Weekly D1213 (Fla. 3d DCA May 31, 2017); Porkolab v. State, 187 So. 3d 945 (Fla. 3d DCA 2016). To the extent necessary to establish his claim, it was incumbent on Rooks to ensure that the record included the parole guidelines under which he was released on parole in 1980.

[6] The 1979 version of the Florida Parole and Probation Commission Guidelines (Rule 23-19.05, Fla. Admin. Code (1979)) provided a matrix (based upon a salient factor score, risk categories, offender characteristics, and parole prognosis) setting forth the "Customary Total Time in Months to be Served Before Release Including Jail Time." In 1979, the range of total time expected to be served by Rooks before release was between 96 and 240 months.

[7] The earliest date Atwell could be released from prison based upon the existing objective parole guidelines.

sentence that "afford[ed] [him] a meaningful opportunity to obtain early release during [his] natural li[fe]. . . ." Henry, 175 So. 3d at 680.

It would appear to us contrary to both logic and jurisprudence to hold that this case is controlled by the Graham/Miller or Henry/Atwell line of cases, given that Rooks cannot make the threshold showing that he received a life without parole sentence, a sentence that effectively resembles a life without parole sentence, or a sentence that failed to afford him a meaningful opportunity to obtain early release during his natural life.[8]

Because Rooks' sentence cannot satisfy this threshold, we conclude that it is not subject to Eighth Amendment challenge under Graham/Miller or Henry/Atwell. **CONCLUSION**

We hold that, because Rooks was sentenced in 1972 to life with parole eligibility, was paroled from prison in 1980 after serving eight and one-half years, and thereafter violated his parole by committing a new crime as an adult,[9] leading to his re-incarceration, neither Graham/Miller nor Henry/Atwell is implicated, the

_____

[8] The First District Court of Appeal, in a recent case with similar facts, reached a similar conclusion. Currie v. State, 42 Fla. L. Weekly D1238 (Fla. 1st DCA May 31, 2017).

[9] See also Guzman v. State, 183 So. 3d 1025, 1026-28 (Fla. 2016) (Pariente, J., concurring) (observing that a juvenile defendant, who was placed on probation for a felony punishable by life imprisonment, and thereafter committed a violation of probation after becoming an adult and sentenced to sixty years in prison, was outside the purview of Graham and was not entitled to be resentenced).

sentence is not illegal, and Rooks is not entitled to a resentencing under Florida's newly-enacted juvenile sentencing scheme.