# Third District Court of Appeal

## State of Florida

Opinion filed October 11, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1604
Lower Tribunal No. 79-1174
_____

**Jeffrey L. Vennisee,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal under Florida Rule of Appellate Procedure 9.141(b)(2) from the Circuit Court for Miami-Dade County, Jason E. Bloch, Judge.

Jeffrey L. Vennisee, in proper person.

Pamela Jo Bondi, Attorney General, and Douglas J. Glaid, Senior Assistant Attorney General, for appellee.

Before ROTHENBERG, C.J., and SUAREZ and FERNANDEZ, JJ.

ROTHENBERG, C.J.

Jeffrey L. Vennisee ("Vennisee") appeals the denial of his motion for postconviction relief. Vennisee, who was a juvenile when he committed a murder on December 10, 1998, was indicted for first-degree murder. On March 26, 1979, Vennisee pled guilty to second-degree murder and was sentenced to life with the possibility of parole. Vennisee contends that his sentence is unconstitutional under the Eighth Amendment and based on the United States Supreme Court's decision in Miller v. Alabama, 567 U.S. 460 (2012), and the Florida Supreme Court's decision in Atwell v. State, 197 So. 3d 1040 (Fla. 2016), and that he is entitled to a resentencing hearing and to be resentenced pursuant to chapter 2014-220, Laws of Florida, § 1. For the reasons that follow, we affirm the trial court's order denying Vennisee's motion for postconviction relief.

## The Evolving Juvenile Sentencing Case Law

In Roper v. Simmons, 543 U.S. 551 (2005), the United States Supreme Court held that a sentence of death for a crime committed by a juvenile violates the Eighth Amendment's prohibition against cruel and unusual punishment. Five years later, the United States Supreme Court addressed whether a life sentence without the possibility of parole imposed upon a juvenile who committed a non-homicide offense was also violative of the Eighth Amendment in Graham v. Florida, 560 U.S. 48 (2010).

2

Graham was sixteen when he committed an armed burglary and an attempted armed robbery. Based on a negotiated plea, Graham pled guilty to the charges, adjudication was withheld, and Graham was placed on probation. Less than six months after being released from custody, Graham, **while still a juvenile**, committed an armed home invasion robbery. Graham, 560 U.S. at 54-55. After conducting a hearing, the trial court found that Graham had violated his probation, adjudicated him guilty of the prior armed burglary and attempted armed robbery, and imposed a sentence of life imprisonment for the armed burglary and a fifteen-year sentence for the attempted armed robbery. Id. at 57. Because Florida had abolished the parole system, a life sentence provided no possibility of release absent the grant of executive clemency. See § 921.002(1)(c), Fla. Stat. (2003). The United States Supreme Court concluded that the life without the possibility for parole sentence that Graham received was akin to a death sentence in that the forfeiture of Graham's life was irrevocable—that good behavior and character improvement were immaterial as he must remain in prison for the remainder of his life. Graham, 560 U.S. at 69-70. Thus, the United States Supreme Court found that Graham's life sentence violated the Eighth Amendment and reversed.

It is important to note, however, that while the Graham Court held that a life sentence without the possibility for parole imposed upon a juvenile for a non-homicide offense violates the Eighth Amendment, the Court did not require that

3

the sentence imposed guarantee the juvenile offender's ultimate release from incarceration. In fact, the Court stated the opposite.

> A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. . . . It bears emphasis, however, that while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society.

Id. at 75.

Two years after addressing life sentences without the possibility of parole imposed upon juveniles who commit **non-homicide** offenses in Graham, the Court addressed the imposition of life without parole sentences imposed upon juveniles who commit **homicide** offenses in Miller. Although the United States Supreme Court did not prohibit life sentences for juveniles who commit homicide offenses, it held that **mandatory** life sentences without the possibility of parole which do not take into account the defendant's "age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences," are unconstitutional. Miller, 567 U.S. at 477. "We therefore hold that the Eighth

4

Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." Miller, 567 U.S. 479. The Court, however, did not issue a categorical bar for life without parole sentences for juvenile offenders. "Because [our] holding is sufficient to decide these cases, we do not consider Jackson's and Miller's alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles . . . ." Id. at 479.

Thus under Graham and Miller, no juvenile offender may be sentenced to a **mandatory** life sentence without the possibility of parole, regardless of whether the offense is a homicide or a non-homicide offense. Another important decision was also made by the United States Supreme Court in Miller. Besides prohibiting mandatory life sentences without the possibility of parole, the Court held that juvenile offenders are constitutionally entitled to individualized sentencing at which the judge or jury will have the opportunity to consider mitigating circumstances, including the offender's age and the circumstances attendant to it, such as immaturity, impetuosity, and the failure to appreciate the consequences. Miller, 567 U.S. at 776-77.

In Falcon v. State, 162 So. 3d 954, 962 (Fla. 2015), the Florida Supreme Court concluded that it was patently unfair to treat similar juvenile offenders differently based solely on when their cases were decided. Thus, the Court held

5

that <u>Graham</u> and <u>Miller</u> must be applied retroactively to juvenile offenders' sentences that were final when these decisions were issued.

Also in 2015, the Florida Supreme Court issued its opinion in <u>Henry v. State</u>, 175 So. 3d 675, 680 (Fla. 2015), which extended the <u>Roper</u> and <u>Graham</u> conclusion—that juvenile life without parole sentences for non-homicide offenses violates the Eighth Amendment—to term-of-years sentences that do not afford any meaningful opportunity to obtain release based on the offender's demonstrated maturity and rehabilitation. Because the defendant in <u>Henry</u>, who was a juvenile when he committed several non-homicide offenses, received an aggregate sentence totaling ninety years, which required that he remain imprisoned until he was at least ninety-five years old with no opportunity to be considered for an earlier release, the Florida Supreme Court held that his sentence was unconstitutional under <u>Graham</u>, and that Henry must be resentenced under the new juvenile sentencing legislation enacted by the Florida Legislature in 2014 (Chapter 2014-220, Laws of Florida). <u>See also</u> <u>Gridine v. State</u>, 175 So. 3d 672, 674-75 (Fla. 2015) (holding that a seventy-five-year sentence for a juvenile who was convicted of an attempted murder was unconstitutional because it failed to provide for a meaningful opportunity for early release).

In <u>Lawton v. State</u>, 181 So. 3d 452, 453 (Fla. 2015), the Florida Supreme Court applied the prohibition of life sentences without the possibility of parole for

6

juveniles convicted of non-homicide offenses even when the juvenile commits a homicide during the same criminal episode. In Kelsey v. State, 206 So. 3d 5 (Fla. 2016), the Florida Supreme Court also held that the trial court must apply and comply with the provisions of Chapter 2014-220 for those juvenile offenders who were convicted of non-homicide offenses; initially received a life sentence for the non-homicide offense(s); were resentenced to a term-of-years sentence pursuant to Graham because the sentence violated the Eighth Amendment; and received a new sentence that is longer than twenty years.

Consistent with this historical case law evolution regarding the sentencing of juvenile offenders, the Florida Supreme Court held that a **mandatory** life sentence, even **with the possibility of parole** after the juvenile offender serves twenty-five years imposed for a homicide offense, is unconstitutional. Atwell v. State, 197 So. 3d 1040 (Fla. 2016). The Florida Supreme Court's extension of Miller in Atwell (which had only found that mandatory life sentences **without the possibility of parole** for juveniles convicted of a homicide were unconstitutional), was based on the Florida Supreme Court's conclusion that the parole system in effect at the time Atwell was sentenced was the "practical equivalent" of a life sentence without the possibility of parole because Atwell's presumptive parole release date had recently been set to 2130, which would be at age 156, thus far exceeding Atwell's life expectancy. Id. at 1044.

We summarize the evolving case law as follows. Mandatory life sentences, with or without the possibility of parole for juveniles convicted of homicide and non-homicide offenses are unconstitutional under <u>Graham</u>, <u>Miller</u>, and <u>Atwell</u>. Sentences for non-homicide offenses which do not provide for a meaningful opportunity to obtain release based on a demonstration of maturity and rehabilitation, either imposed initially or upon a resentencing, are unconstitutional under <u>Henry</u>, <u>Gridine</u>, and <u>Atwell</u>. These holdings are to be applied retroactively. <u>Falcon</u>, 162 So. 3d at 962. And when juveniles are resentenced for non-homicide offenses because their original sentence violated <u>Graham</u>, they must be resentenced pursuant to Chapter 2014-220. <u>Kelsey</u>, 206 So. 3d at 5.

## The Instant Case

The offense at issue in this appeal is a homicide. Vennisee was seventeen when the homicide was committed. Vennisee pled guilty to the homicide in 1979 and was sentenced to life in prison with the possibility of parole. Unlike the juvenile in <u>Miller</u>, who received a mandatory life sentence without the possibility of parole, and the juvenile in <u>Atwell</u>, whose presumptive release date provided him with no meaningful opportunity for early release, Vennisee's sentence provided him with a meaningful opportunity for early release as he was released on October 8, 2002 after serving approximately twenty-three years in prison. When paroled, Vennisee was forty years old.

8

In 2007, Vennisee violated his parole, but he was given another opportunity to demonstrate his maturity, rehabilitation, and ability to live outside of the prison environment. His parole was reinstated, and he was placed on community control. Approximately four months later, Vennisee violated his community control and parole by committing and subsequently being convicted of committing the following felony offenses, for which he was sentenced to ten years imprisonment, and his parole was revoked.

> Case number: F08-14834—possession of a firearm by a convicted felon.

> Case number: F08-10916—strong-arm robbery and planting a hoax bomb.

> Case number: FO8-10917—attempted strong-arm robbery and planting a hoax bomb.

> Case number: F08-14893—strong-arm robbery and planting a hoax bomb.

On April 16, 2015, Vennisee filed a motion for postconviction relief arguing that he is entitled to a resentencing pursuant to Miller, Graham, and Falcon for his conviction of the homicide offense that he committed when he was a juvenile. The trial court denied Vennisee's motion on December 31, 2015, finding that Vennisee's sentence of life with parole for a homicide offense did not violate Miller (and thus did not violate Falcon, which provides for retroactive application of Miller). Vennisee did not initially appeal the trial court's order denying his

9

motion for postconviction relief, but on July 8, 2016, this Court granted Vennisee a belated appeal.

Subsequent to the issuance of the trial court's order and during the pendency of this appeal, the Florida Supreme Court decided Atwell (extending Miller to include juveniles convicted of homicides and who received life sentences with the possibility of parole). We will, therefore, analyze Vennisee's arguments under the most current status of the relevant law.

As already discussed, where the Court in Miller only found that mandatory life sentences without the possibility of parole for homicides committed by juveniles were violative of the Eighth Amendment, since Vennisee filed his appeal, the Florida Supreme Court extended the Miller holding to mandatory life with parole sentences for homicide offenses in Atwell. Thus, Vennisee is entitled to the benefit and retroactive application of Atwell.

We conclude, as this Court, the First District Court of Appeal, and the Fourth District Court of Appeal have already concluded in similar cases, that because Vennisee has already been provided with a meaningful opportunity to obtain release, was released, and violated the terms of his release by committing new felony offenses while an adult, Miller, Graham, and Atwell are not implicated, and Vennisee is not entitled to a resentencing because his sentence is not cruel and unusual under the Eighth Amendment.

10

In <u>Rooks v. State</u>, 42 Fla. L. Weekly D1573 (Fla. 3d DCA July 12, 2017), this Court addressed a similar situation. Rooks was convicted in 1972 for a non-homicide offense he committed while a juvenile, and he was sentenced to life with parole eligibility. Rooks was paroled in 1980 at the age of twenty-four after serving eight and one-half years. In 1986, at the age of thirty, Rooks violated his parole and was returned to prison as a parole violator. In 2006, at the age of fifty, Rooks was again released on parole, and although he was initially charged with violating his parole, he was not returned to prison and his parole was restored. In 2014, at the age of fifty-eight, Rooks was arrested for trafficking in heroin, and as a result, in 2015, his parole was revoked and he was returned to prison.

Thereafter, Rooks filed a motion to correct what he claimed was an illegal sentence based on <u>Graham</u>, <u>Miller</u>, <u>Henry</u>, and <u>Atwell</u>. The trial court denied Rooks' motion, and this Court affirmed after finding that the parole system and guidelines, under which Atwell was serving his sentence, differed from the parole system and guidelines applicable to Rooks, as evident from the fact that Rooks was released on parole after serving only eight and one-half years of a life sentence, whereas Atwell's presumptive parole release date was in 2130, at which point Atwell would be 156 years old. <u>Rooks</u>, 42 Fla. L. Weekly at D1575-76. Thus, Rooks' sentence did not resemble a mandatory life without parole sentence in violation of <u>Miller</u> or <u>Atwell</u>, nor an aggregate sentence that failed to provide

11

Rooks with any meaningful review in violation of <u>Henry</u> and <u>Atwell</u>. <u>Rooks</u>, 42 Fla. L. Weekly at D1575-76. This Court therefore concluded that neither <u>Graham</u>/<u>Miller</u> nor <u>Henry</u>/<u>Atwell</u> were implicated, Rooks' sentence was not illegal, and he was not entitled to resentencing under Florida's newly-enacted juvenile sentencing scheme. <u>Rooks</u>, 42 Fla. L. Weekly at D1576.

The First District and Fourth District Courts of Appeal reached the same conclusion in <u>Currie v. State</u>, 219 So. 3d 960 (Fla. 1st DCA 2017), and <u>Rogers v. State</u>, 42 Fla. L. Weekly D1493 (Fla. 4th DCA July 5, 2017), respectively. Currie was a juvenile when he committed an armed sexual battery and was sentenced to life in prison with the possibility of parole. <u>Currie</u>, 219 So. 3d at 960. When Currie was twenty-five years old he was released on parole. He subsequently violated his parole and was returned to prison. The First District concluded that although Currie was a juvenile when he committed these offenses and he received a life sentence, he was "not entitled to be resentenced because he has not received the functional equivalent of a life sentence. He has already been released once, and he has the potential to be released again." <u>Id.</u>

In 1972, Rogers was convicted of a robbery that he committed when he was seventeen and sentenced to life in prison with the possibility of parole. <u>Rogers</u>, 42 Fla. L. Weekly at D1493. After spending seven years in prison, he was released on parole. <u>Id.</u> In 1979, at the age of twenty-eight, Rogers was reincarcerated when he

12

violated his parole by committing an armed robbery.  Id.  Rogers was released on parole again in 1990, but reincarcerated when he violated his parole by committing a grand theft in 1999.  Id.  Rogers claimed that his life sentence for a non-homicide offense he committed as a juvenile was unconstitutional pursuant to Graham and sought resentencing pursuant to chapter 2014-220.  Id. at D1493-94.  The Fourth District concluded that because Rogers was released on parole, he could not show a violation of the Eighth Amendment under Graham, which held that juvenile offenders who commit non-homicide offenses do not have to be guaranteed eventual freedom.  Id.  They must only be afforded a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.  Id.  As the Fourth District noted in Rogers:

> A juvenile offender who has actually been released from a prison sentence has received more than what Graham requires.  Rogers had an opportunity for release and was in fact released from prison twice on parole.  He has not shown that his sentence violates the Eighth Amendment under Graham, and he is not entitled to resentencing.

Id. (footnote omitted); see also Guzman v. State, 183 So. 3d 1025, 1027 (Fla. 2016) (Pariente, J., concurring) (concluding that Guzman, who was fourteen when he committed several non-homicide offenses, was provided an opportunity for rehabilitation, but committed a kidnapping as an adult while on probation for the offenses committed as a juvenile, was "removed from the purview of Graham" and was not entitled to be resentenced); Davis v. State, 42 Fla. L. Weekly D1481, 1482

(Fla. 5th DCA June 30, 2017) (concluding that, although Davis was seventeen when he committed non-homicide offenses, because he was eighteen when he violated his youthful offender sentence by committing an armed carjacking and he received an aggregate forty-five year prison sentence for the offenses he committed as a juvenile, he was not entitled to be sentenced under Florida's new juvenile sentencing scheme in order to be in compliance with Graham and Miller).

## CONCLUSION

Vennisee, who committed a homicide while a juvenile, was sentenced in 1979 to life with the possibility of parole. After serving approximately twenty-three years in prison, he was released on parole in 2002. Vennisee violated his parole in 2007, received another chance, and then violated his parole again by committing seven new felony offenses. His parole was revoked, and he was returned to prison. Because Vennisee has already been provided with a meaningful opportunity to obtain release, was released, and then was returned to prison after he violated the terms of his release by committing new felony offenses as an adult (he was approximately forty-five years old), we conclude that Graham, Miller, and Atwell are not implicated, Vennisee's sentence is not illegal, and he is not entitled to resentencing under Chapter 2014-220. He has, in fact, received more than Graham, Miller, and Atwell require.

Affirmed.

14